## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAROL ROTHERMEL, | ) | 3:23-cv-1329 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| AS TRUSTEE ON BEHALF OF THE | ) | |
| HOLDERS OF THE ADJUSTABLE- | ) | |
| RATE MORTGAGE TRUST 2007-1, | ) | |
| ADJUSTABLE-RATE MORTGAGE- | ) | |
| BACKED PASS-THROUGH | ) | |
| CERTIFICATES SERIES 2007-1, *et al.*, | ) | |
| *Defendants.* | ) | March 28, 2025 |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS AND CROSS MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this action, *pro se* Plaintiff Carol Rothermel appears to allege violations of several federal, state, and common law rights stemming from Defendants' alleged actions in connection with the foreclosure of Plaintiff's home.  In short, the amended complaint appears to allege that, through a series of actions, Defendants U.S. Bank National Association as Trustee on Behalf of the Holders of the Adjustable-Rate Mortgage Trust 2007-1, Adjustable-Rate Mortgage-Backed Pass-Through Certificates Series 2007-1 ("U.S. Bank"); Select Portfolio Servicing ("SPS")[1]; Geraldine A. Cheverko ("Attorney Cheverko"); and John L. Mezzo, worked collectively to unlawfully and fraudulently foreclose on Plaintiff's home.  U.S. Bank and SPS have moved to dismiss the amended complaint for lack of personal jurisdiction, insufficient service, lack of subject matter jurisdiction, and failure to state a claim.  Attorney Cheverko has moved to dismiss

---

[1] Plaintiff refers to SPS as "Select Portfolio Servicing" in the caption of the amended complaint, but refers to it as "Select Portfolio Servicing Inc." in the body of the complaint. *See* Am. Compl., ECF No. 26 at 1.  SPS refers to itself as "Select Portfolio Servicing, Inc." in its briefing. *See* U.S. Bank & SPS Mot. to Dismiss, ECF No. 42 at 1.

for lack of subject matter jurisdiction and failure to state a claim. Plaintiff has also moved for summary judgment, and Mezzo has cross moved for summary judgment.

For the reasons detailed below, the Court GRANTS in part Attorney Cheverko's motion to dismiss, GRANTS in part and DENIES in part U.S. Bank and SPS's motion to dismiss, GRANTS in part Mezzo's motion for summary judgment, and DENIES in part Plaintiff's motion for summary judgment. Specifically, the Court grants the motions to dismiss and Mezzo's motion for summary judgment and denies Plaintiff's motion for summary judgment as to Plaintiff's federal law claims and quiet title claim, which are dismissed without leave to amend. The Court also denies U.S. Bank's motion to dismiss as to lack of personal jurisdiction and insufficient service of process. As the parties have not briefed the issue of supplemental jurisdiction, the Court declines to decide the remaining state law claims pending additional briefing from the parties.

## I.    FACTUAL BACKGROUND

Because the amended complaint alleges very few facts in nonchronological order, the Court takes judicial notice of state court documents relating to the underlying foreclosure proceeding in order to describe the factual history and procedural posture of this case. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (courts may take "judicial notice of relevant matters of public record"); *HSBC Bank USA, Nat'l Ass'n as Tr. for Opteum Mortg. Acceptance Corp. Asset-Backed Pass-Through Certificates Series 2005-2 v. Vitti*, No. 3:21-cv-1221 (SRU), 2021 WL 4810578, at *1 n.1 (D. Conn. Oct. 15, 2021) (taking judicial notice of underlying foreclosure action). To the extent Plaintiff has alleged facts in her amended complaint, they are accepted as true for purposes of deciding Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The foreclosure proceeding underlying this action ("Foreclosure Action") was filed by U.S. Bank, the assignee of the mortgage loan at issue, on March 20, 2013, in Connecticut Superior

Court.  *See U.S. Bank Nat'l Ass'n, as Tr., ex rel. Holders of Adjustable Rate Mortg. Trs. v. Rothermel*, No. FST-CV13-6017616-S (Conn. Super. Ct.); Foreclosure Action Docket, ECF No. 42-3 at 3.  The Foreclosure Action was brought following Rothermel's alleged default on a $1,000,000 mortgage loan encumbering 104 Bald Hill Road in New Canaan, Connecticut. Foreclosure Action Compl., ECF No. 42-2 ¶¶ 1, 2, 4–6.  SPS is the mortgage servicer and attorney-in-fact for U.S. Bank.  Benight Aff., ECF No. 42-4 ¶ 1.  Attorney Cheverko entered an appearance on behalf of U.S. Bank in the Foreclosure Action on July 24, 2019.  Not. of Appearance, ECF No. 39-4.

U.S. Bank's first motion for judgment of strict foreclosure was granted on January 13, 2014.  June 17, 2019, Mem. Decision, ECF No. 42-8 at 174.  Following years of litigation on motions to open the judgment and extend the law day, on February 9, 2019, the Connecticut Superior Court granted U.S. Bank's motion to open the judgment and extend the law day and scheduled the law day for March 12, 2019.  *Id.*  On March 13, 2019, the day after the law day expired, Rothermel, represented by counsel, filed another motion to open the judgment and extend the law day.  *Id.* at 175.  The Superior Court denied the motion.  *Id.* at 183.  Further details regarding the arguments made in the motion and the Superior Court's holding are discussed below. Rothermel was evicted from the property by a court order on November 29, 2022.  *See* March 6, 2023, Order, ECF No. 42-11 at 2.

Plaintiff brings this action for damages and to quiet title of the property located at 104 Bald Hill Road.  ECF No. 26 at 8.  She alleges generally that Defendants have "unclean hands" and engage in a "practice and a pattern of stealing homes."  *Id.* at 7.  She claims that she paid a total of $64,650.28 to SPS, the servicer of the mortgage on her property, in the period between February of 2014 and August of 2018, "under false pretense."  *Id.* at 2; Pl.'s Exs., ECF No. 28 at 3.  Plaintiff

alleges she submitted a complete loss mitigation application[2] in 2017 with SPS, for which SPS acknowledged receipt in a letter dated January 19, 2017.  ECF No. 26 at 2; ECF No. 28 at 4.  In addition, Plaintiff filed a request for a short payoff to refinance her mortgage in September of 2018, to which SPS responded that Plaintiff would be required to cover the closing costs of the refinance.  ECF No. 26 at 3.  During this time, SPS continued to acknowledge that Plaintiff's loss mitigation application was under review and that it would not move forward with the foreclosure of her home until a final denial of all loss mitigation options.  *Id.*  On March 6, 2019, which was six days before the law day scheduled for March 12, 2019, SPS sent a letter to Plaintiff indicating that "SPS considers foreclosure only as a last resort.  We want to work with you to find a solution to avoid foreclosure."  *Id.* at 4.

Despite these assurances, Plaintiff alleges SPS nonetheless proceeded with obtaining a foreclosure judgment on Plaintiff's home before she received final denial of her loss mitigation application.  *See id.* at 4–5.  Plaintiff asserts that SPS, by proceeding in this manner, has violated federal regulations implementing Real Estate Settlement Procedures Act ("RESPA") that prohibit a servicer from moving for foreclosure judgment or order of sale while the loss mitigation process is ongoing—also known as dual tracking.  *Id.* at 4 (citing 12 C.F.R. § 1024.41(g)).

Moreover, Plaintiff alleges SPS failed to communicate a final denial of Plaintiff's request for a short payoff.  *Id.* at 5.  Plaintiff claims she submitted a signed agreement for a short payoff of $575,000, which SPS rejected by telling her "the deal is off the table"; but Plaintiff alleges SPS failed to formally reject the offer in writing.  *Id.*  Thus, according to Plaintiff, SPS has violated a RESPA statutory provision that requires loan servicers to respond to borrower inquiries and

---

[2] A "loss mitigation application" is a written or oral request for an alternative to foreclosure.  *See* 12 C.F.R. § 1024.31.

another RESPA regulation that requires loan servicers to respond to a borrower's notice of error in writing. *Id.* (first citing 12 U.S.C. § 2605(e); and then citing 12 C.F.R. § 1024.35(e)).

Plaintiff has also put forth certain additional facts following her submission of the amended complaint. Plaintiff avers that Defendant Mezzo actually bought her house in 2015 while it was in foreclosure, but was unable to take possession of it because the home was still legally owned by Plaintiff. *See* Pl.'s Aff., ECF No. 98 at 1. Plaintiff also attaches an affidavit by William Olsen, who appears to have lived at Plaintiff's property during the relevant period. *See* Olsen Aff., ECF No. 30 at 1. He claims to have seen Mezzo, Mezzo's wife, and Mezzo's parents on Plaintiff's property dozens of times. *Id.* at 2, 3 (alleging that he and Plaintiff "could not understand why [they were] being harassed by John Mezzo" and that the Mezzos "were acting like they owned the house"). Olsen also claims that, in 2022, a "researcher" working on behalf of Olsen and Plaintiff learned from Mezzo's then-coworker that Mezzo "has been trying to get [Plaintiff's] house for many many [sic] years" because "[i]t is close to his parent's house and the school system." *Id.* at 3.

On November 29, 2022, Defendants evicted Plaintiff using an "emergency eviction" process and scheduled a foreclosure sale "due to the house already being sold." ECF No. 26 at 5; ECF No. 28 at 5; ECF No. 98 at 2. Plaintiff claims that she was evicted so Mezzo could take possession of her property and that Defendants conspired to disguise Mezzo's involvement in the purchase. *See* ECF No. 98 at 1–2.

Plaintiff alleges that this was an "orchestrated scheme" to "steal" her house and that the foreclosure judgment was obtained "by fraud, misrepresentation and other misconduct," which constitute violations of the Fair Debt Collection Practices Act ("FDCPA"), through the use of false representation and unfair means to collect a debt. ECF No. 26 at 5–6 (citing 15 U.S.C. §§ 1692e,

1692f).  In addition, Plaintiff alleges "predicate acts of mail fraud," for a civil claim under the Racketeer Influenced Corrupt Organizations Act ("RICO") because she never received an Emergency Mortgage Assistance Program ("EMAP") notice via certified mail and her signature on the green certified mail receipt was forged.  *Id.* at 6–7.  According to Plaintiff, Defendants' conduct shows that they had violated the civil RICO Act, committed "extrinsic fraud," aided and abetted fraud, had a civil conspiracy to defraud, and violated the Connecticut Unfair Trade Practices Act ("CUTPA").  *Id.*  Plaintiff further claims that unnamed Defendants use shell corporations "to disguise ownership by bad actors in the acquisition of real estate that could involve money laundering," in contravention of the Corporate Transparency Act of 2024 ("CTA"), and it appears that a "Bald Hill LLC" was formed to acquire her property.  *Id.* at 8.  Plaintiff further alleges that she was not given a final accounting of her loan, in violation of the Truth in Lending Act ("TILA"), although she does not identify which Defendant would have been responsible for providing the accounting.  *Id.*  Finally, Plaintiff refers to Section 1983 and claims that Defendants violated her civil rights, although she fails to identify which rights.

The Court and Defendants liberally construe the references to Defendants' alleged violations summarized above to be claims that Plaintiff intends to bring.  Because the amended complaint is often unclear as to which Defendant had committed the violative conduct, the Court assumes that Plaintiff is bringing all her claims against all Defendants.  The federal claims are as follows:  (1) RESPA violations for dual tracking and failure to respond to notice of error in writing; (2) FDCPA violations for using false representation and unfair means to collect a debt; (3) a Section 1983 claim; (4) a civil RICO violation; (5) a TILA violation; and (6) a violation of the CTA.  The state law claims are:  (1) quiet title; (2) extrinsic fraud; (3) aiding and abetting fraud;

(4) civil conspiracy to defraud; and (5) CUTPA violations.  As discussed below, Plaintiff has also

raised additional federal and state law claims in her opposition to the motions to dismiss.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed the instant action on October 12, 2023, against U.S. Bank, Attorney

Cheverko, Mezzo, and seven other defendants.  *See* Compl., ECF No. 1.  The Court dismissed the

case for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, as the original

complaint sought to void the allegedly wrong foreclosure judgment issued by the Connecticut

Superior Court regarding Plaintiff's home.  *See* Order, ECF No. 15.  The Court later granted a

motion to reopen the case to the extent Plaintiff was seeking money damages for the allegedly

fraudulently-procured foreclosure judgment, but denied the motion to the extent Plaintiff requested

that the Court vacate the state judgment.  *See* Order, ECF No. 17.  Upon reopening the case, the

Court also ordered Plaintiff to show cause why she believed that the Court had subject matter

jurisdiction over the case.  Order, ECF No. 18.

After reviewing Plaintiff's response to the Court's order to show cause, on January 30,

2024, the Court *sua sponte* dismissed the complaint without prejudice for lack of subject matter

jurisdiction.  *See* Order, ECF No. 24.  The Court found that Plaintiff's complaint could not support

diversity jurisdiction, as Plaintiff was a Connecticut citizen and at least one of the Defendants was

also a Connecticut citizen.  *Id.*  The Court additionally concluded that Plaintiff had not stated a

plausible claim arising under federal law.  *Id.*  The Court granted Plaintiff leave to amend.  *Id.*

On March 5, 2024, Plaintiff timely filed her amended complaint against U.S. Bank, SPS,

Attorney Cheverko, and Mezzo.  ECF No. 26.  Following the amended complaint, Plaintiff also

filed two documents that purport to include evidence, to which the Court informed Plaintiff that

evidence was not required at the pleading stage and thus will not be considered. *See* Orders, ECF Nos. 32, 36.

Attorney Cheverko, U.S. Bank, and SPS filed their motions to dismiss Plaintiff's claims against them, while Mezzo filed an answer to the amended complaint. Cheverko Mot. to Dismiss, ECF No. 39; ECF No. 42; Mezzo Answer, ECF No. 49. Plaintiff's responses to the motions to dismiss raised facts and claims that were not alleged in the amended complaint. Additionally, although the Court had not yet ruled on the motions to dismiss, Plaintiff filed a motion for summary judgment, which once again raised many of the same facts and claims that were alleged in her responses to the motions to dismiss but not in her amended complaint. *See* Pl.'s Mot. for Summ. J., ECF No. 67. In response, Mezzo cross-moved for summary judgment. Mezzo Mot. for Summ. J., ECF No. 76. In this decision, the Court resolves all of the federal law claims and quiet title claim in all of these motions.

\* \* \*

## DEFENDANTS' MOTIONS TO DISMISS

For the reasons described below, the Court grants in part SPS and U.S. Bank's motion to dismiss and grants in part Attorney Cheverko's motion to dismiss.

### I. SUBJECT MATTER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction if the Court lacks the "statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id.*

The Court first holds that it lacks subject matter jurisdiction over Plaintiff's renewed request to quiet title of the 104 Bald Hill Road property.

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). That is because, "within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction where four requirements are met: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (cleaned up). As the Court has previously noted, *see* ECF Nos. 15 & 17, all four requirements are met here with respect to Plaintiff's claim to quiet title to 104 Bald Hill Road.

First, Plaintiff lost in state court when the Connecticut Superior Court denied her motion to open the judgment and concluded that title in the property vested in U.S. Bank. Second, Plaintiff's injury—*i.e.*, loss of her home—was caused by the Superior Court's judgment. ECF No. 26 at 6. Third, Plaintiff asks this Court to effectively overrule the Superior Court's judgment by "remand[ing] this case back to the Superior Court for the sole purpose of instructing the [Superior Court] to grant 'Quiet Title.'" Pl.'s Opp. to Cheverko Mot., ECF No. 51 at 3; ECF No. 26 at 8. Fourth, the foreclosure judgment was rendered before Plaintiff sought relief from this Court. As

all of the requirements of the *Rooker-Feldman* doctrine are satisfied, the Court lacks subject matter jurisdiction over Plaintiff's quiet title claim.

Because the Court lacks subject matter jurisdiction over this claim, it is dismissed without prejudice, *see Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) (noting that when a claim is dismissed for lack of subject matter jurisdiction, the disposition "cannot be entered with prejudice"), but without leave to amend. As the Court has previously noted, however, Plaintiff can theoretically proceed with her request for monetary damages for injuries sustained as a result of what she claims is a fraudulently-procured state court judgment, to the extent she states a cognizable claim for fraud. *See* ECF No. 17.

## II.    PERSONAL JURISDICTION OVER DEFENDANT U.S. BANK

U.S. Bank has moved for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), contending that, because it was not properly served, the Court lacks personal jurisdiction over it. For the reasons described below, the Court denies U.S. Bank's motion to dismiss as to personal jurisdiction and insufficient service of process.

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise lack of personal jurisdiction as a defense by motion before a responsive pleading. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Before a federal court may exercise personal jurisdiction over a defendant, [however,] the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A defendant may move to dismiss a complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). In circumstances like those at issue here, a court's analyses under Rules 12(b)(2) and 12(b)(5) may

merge: if service of process on U.S. Bank was insufficient, then the Court may not exercise personal jurisdiction over it. *See Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) ("While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are 'closely interrelated.'" (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2022))).

Federal Rule of Civil Procedure 4 sets forth the rules for service of process in a civil action. *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules." *Id.* "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.*

The manner in which service can be made on a defendant under Rule 4 depends on the defendant's status. If the defendant is a domestic corporation, partnership, or association, Rule 4(h) provides that service can be made according to the relevant state law for serving a summons in the state where the district court is located or where service is made, or by delivering a copy of the summons and the complaint to "a managing or general agent" or "any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). Unless service is waived pursuant to Fed. R. Civ. P. 4(d), a plaintiff must file an affidavit proving service. Fed. R. Civ. P. 4(*l*)(1).

If a plaintiff does not properly serve a defendant within ninety days after filing the complaint, Rule 4(m) provides that "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." That Rule further provides that, "if the plaintiff shows good cause

for the failure, the court must extend the time for service for an appropriate period." *Id.*  Courts in this circuit have extended the deadline for a plaintiff to effectuate proper service pursuant to Rule 4(m) in two ways.  First, the court *must* extend the service deadline if the plaintiff can demonstrate "good cause," which is a high standard, generally requiring "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond her control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) (cleaned up).

Second, the court *may* extend the service deadline in its discretion, "even where there is no good cause shown." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order).  Courts considering whether to exercise discretion to extend the service deadline in the absence of good cause consider factors such as:  whether a refiled action would be time-barred; whether the defendant had actual notice of the claims; whether the defendant attempted to conceal the defect in service; and whether the defendant would be prejudiced by an extension of the service period.  *See, e.g.*, *John v. City of Bridgeport*, 309 F.R.D. 149, 154 (D. Conn. 2015); *Jordan*, 928 F. Supp. 2d at 598.

B.  Discussion

Plaintiff could have properly served U.S. Bank in one of at least three ways:  (1) by serving the Connecticut Secretary of State and mailing to U.S. Bank, via registered or certified mail, a true and attested copy of the summons and complaint with an endorsement of the service upon the Connecticut Secretary of State pursuant to Conn. Gen. Stat. § 52-59b(c); (2) by serving U.S. Bank in the method provided under state law in the state in which service is made; or (3) by serving an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and mailing a copy of the summons and complaint to U.S. Bank pursuant

to Fed. R. Civ. P. 4(h)(1)(B).  Plaintiff served U.S. Bank by sending the summons and complaint via certified mail to the address "60 LEXINGTON AVE, SAINT PAUL MN 55107-2292."[3]  *See* Proof of Service, ECF No. 38 at 4.  Because mailing the complaint and summons by certified mail to U.S. Bank alone did not constitute proper service under any of the available methods, U.S. Bank is correct that it has not been properly served.

U.S. Bank makes no mention of the Court's authority to extend the service deadline, but the Court will *sua sponte* consider whether to extend the service deadline pursuant to Rule 4(m). Plaintiff's *pro se* status undoubtedly earns her a certain degree of solicitude, such as "leniency in the enforcement of . . . procedural rules."  *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  However, this solicitude does not automatically create the type of "exceptional circumstance" contemplated by Rule 4(m)'s good cause requirement.  *See Jordan*, 928 F. Supp. 2d at 598.

Nevertheless, the Court will exercise its discretion to extend the service deadline pursuant to the provision of Rule 4(m) authorizing such discretion.  Three out of four factors support the Court's exercise of discretion in these circumstances.  *See John*, 309 F.R.D. at 154.  First, any refiled action by Plaintiff could be time-barred, which weighs heavily in favor of extending the service deadline.  As discussed below, the Court dismisses Plaintiff's federal claims without leave to amend, but at least one of Plaintiff's remaining state law claims—for example, the CUTPA claim—may be barred by the statute of limitations.  *See* Conn. Gen. Stat. § 42-110g(f) (setting three-year statute of limitations for CUTPA claims); *see also* ECF No. 42-1 at 16 (arguing that the statute of limitations for Plaintiff's CUTPA claim based on the allegedly fraudulent foreclosure judgment would have begun running on March 13, 2019).  "[C]ourts have consistently considered

---

[3] U.S. Bank contends that its address is 60 *Livingston* Avenue in Saint Paul, Minnesota, not 60 Lexington Avenue. *See* U.S. Bank & SPS's Opening Br., ECF No. 42-1 at 13.

the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006) (noting that "this factor alone may be sufficient to justify extending the time for service").

Second, U.S. Bank had actual notice of Plaintiff's claims. U.S. Bank, SPS, and Attorney Cheverko are all represented by same attorney in this action: Attorney Cheverko herself. Because Attorney Cheverko had notice of Plaintiff's claims by virtue of representing herself and SPS in the action, then it necessarily follows that U.S. Bank, which is also represented by Attorney Cheverko, would have had actual notice. While it is true that proper service on Attorney Cheverko and SPS does not constitute proper service on U.S. Bank, it is demonstrably clear that U.S. Bank has been on notice of Plaintiff's claims since Attorney Cheverko and SPS were served. Thus, this factor also weighs in favor of extending the time for Plaintiff to effectuate proper service.

The third factor, concerning whether U.S. Bank attempted to conceal the defect in service, weighs against extending the service deadline, if marginally. *See John*, 309 F.R.D. at 156 (extending the service deadline despite the defendant promptly raising the defect in service); *Jordan*, 928 F. Supp. 2d at 599 (reasoning that this factor was "inapplicable" where the defendant promptly raised the defect in service because "this factor alone does not offset the numerous reasons that support granting [the] plaintiff additional time to correct service of process"). U.S. Bank timely raised the issue of improper service in the present motion to dismiss filed jointly with SPS. Still, this factor only marginally weighs against extending the service deadline given the possibility that at least one of Plaintiff's claims may be time-barred and that U.S. Bank is represented by the same attorney as two of the other Defendants.

Finally, the fourth factor—prejudice (or lack thereof) to the defendant—pushes the balance of factors in favor of extending the service deadline. U.S. Bank will not be prejudiced by an

extension of the service deadline, and if U.S. Bank has suffered any prejudice from the delay in proper service, such prejudice is "slight" because Plaintiff's failure to timely serve U.S. Bank has aged the case by months, not years. *See John*, 309 F.R.D. at 156. Moreover, the likelihood of prejudice is diminished in light of U.S. Bank's knowledge of the existence of the action, and does not outweigh the other reasons for granting an extension. On balance, an extension of the service deadline is justified here.

In light of the circumstances of this case, the Court will exercise its discretion to extend the deadline *nunc pro tunc* for Plaintiff to effectuate proper service on U.S. Bank. Accordingly, U.S. Bank's motion to dismiss on the basis of lack of personal jurisdiction and insufficient service is denied without prejudice to renewal. By April 11, 2025, Plaintiff must file proof of proper service on U.S. Bank. As it has been more than a year since Plaintiff's initial complaint was filed and because the Court has explained how Plaintiff can properly serve U.S. Bank, the Court will not grant any further extension of the deadline, and will dismiss Plaintiff's remaining state law claims against U.S. Bank if proof of service is not timely filed.

## III.    FAILURE TO STATE A CLAIM

The Court next turns to U.S. Bank, SPS, and Attorney Cheverko's arguments that Plaintiff fails to state a claim for relief under RESPA, FDCPA, Section 1983, civil RICO, TILA, and the CTA. For the reasons described below, the Court concludes that the foregoing claims are barred by *res judicata*, time-barred, or should otherwise be dismissed for failure to state a claim for relief, and leave to amend is not appropriate.

As a preliminary matter, Plaintiff makes new factual allegations and raises new claims in her oppositions to the motions to dismiss. While a brief opposing a motion to dismiss is not the appropriate mechanism to amend a complaint, *see Philippeaux v. United States*, No. 10 Civ 6143

(NRB), 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011), the Court will consider these new allegations because Plaintiff is proceeding *pro se*. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (when a plaintiff is proceeding *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the [amended] complaint, treating the new factual allegations as amending the [amended] complaint"); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion.").[4]

A.  <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Iqbal*, 556 U.S. at 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

---

[4] After noticing that Defendants Cheverko, SPS, and U.S. Bank had not fully complied with Local Rule 12, the Court allowed Plaintiff to amend her response to Attorney Cheverko's motion to dismiss, which Plaintiff had previously opposed, and to oppose the motion to dismiss filed by SPS and U.S. Bank, which she had not previously done.  *See* Order, ECF No. 88.  Plaintiff complied with the new deadline to oppose SPS and U.S. Bank's motion to dismiss, Pl.'s Opp. to U.S. Bank & SPS Mot., ECF No. 99, and timely filed an affidavit as an amended opposition to Attorney Cheverko's motion to dismiss, ECF No. 98.  Plaintiff also filed an untimely "revised" amended response to "U.S Bank and John Mezzo's Motion to Dismiss the First Amended Complaint," *see* ECF No. 102.  The Court has considered all of Plaintiff's filings in connection with this ruling, including the untimely filing, but notes that Mezzo has not in fact filed a motion to dismiss the amended complaint.

determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

B. RESPA

The Court first dismisses Plaintiff's RESPA claim brought against U.S. Bank, SPS, and Attorney Cheverko.

1. *U.S. Bank and SPS*

Pursuant to the U.S. Constitution's Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, and the corresponding Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give

to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  In analyzing preclusion doctrines, a court must apply the preclusion law of the state that rendered the decision.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  Thus, here, Connecticut law dictates the preclusive effect of a prior state action.

Under Connecticut law, "[a] former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim.  Claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (quoting *Joe's Pizza, Inc. v. Aetna Life & Cas. Co.*, 236 Conn. 863, 871–72 (1996)).   "The doctrine of [claim preclusion] holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Powell v. Infinity Ins. Co.*, 282 Conn. 594, 600 (2007).  Claim preclusion under Connecticut law requires four elements:  (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue.  *Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 156–57 (2016); *see also Tracey v. Miami Beach Ass'n*, 216 Conn. App. 379, 392 n.15 (2022).

The first element is not in question here, as the judgment of foreclosure was rendered by the Connecticut Superior Court, which is a court of competent jurisdiction.

As to the second requirement, U.S. Bank was a party to the Foreclosure Action.  And although SPS was not a named party in the Foreclosure Action, the application of claim preclusion

to bar Plaintiff's RESPA claim against SPS is proper because SPS was in privity with U.S. Bank. Although "privity is difficult to define," it is a "shorthand statement for the principle that preclusion should be applied only where there exists such an identification in interest of one person with another as to represent the same legal rights." *Straza Bldg. & Constr., Inc. v. Harris*, 207 Conn. App. 649, 659 (2021) (cleaned up).   As stated above, SPS was the servicing agent and attorney-in-fact for U.S. Bank, the plaintiff in the Foreclosure Action.   ECF No. 42-4 at 2.   To demonstrate this, U.S. Bank filed on the Foreclosure Action docket its signed Limited Power of Attorney which appointed SPS to "[d]emand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by [U.S. Bank], and to use or take any lawful means for recovery by legal process or otherwise" and "[t]ransact business of any kind regarding the Loans, and obtain an interest therein and/or in any building securing payment thereof, as U.S. Bank's act and deed, to contact for, purchase, receive and take possession and evidence of title in and to the property and/or to secure payment of a promissory note or performance of any obligation or agreement." *Id.* at 7.   Thus, it is clear that U.S. Bank and SPS share the same relevant legal rights in this circumstance.   Moreover, the allegedly improper acts at issue in both the Foreclosure Action and the instant action were performed by SPS on behalf of U.S. Bank.   Therefore, SPS is in privity with U.S. Bank with respect to the claims presently made by Plaintiff against SPS.

The final two elements for claim preclusion are also met, as Plaintiff fully litigated in the Connecticut courts the RESPA dual tracking and failure to respond in writing claims she now makes in the present case.   First, Plaintiff's RESPA dual tracking claim here is duplicative of the issues raised in Plaintiff's motion to open the judgment filed on March 13, 2019.   In her motion to open the judgment, Plaintiff, through counsel, argued as follows: that she failed to file her motion

prior to the law day because SPS misled her into believing that it would not move forward with the foreclosure, as phone conversations with SPS appeared to indicate that Plaintiff's short payoff offer of $575,000 was satisfactory; that she never received a formal written denial of her short payoff offer; that SPS personnel indicated, the week before the law day, that SPS was not moving forward with the foreclosure; and that Plaintiff received a letter from SPS several days before the law day that indicated the foreclosure had been postponed and rescheduled to March 13, 2019, which is the day *after* the actual law day of March 12, 2019.  Mot. to Open J., ECF No. 42-6 at 4–6.

Following an evidentiary hearing on the motion, Hr'g Tr., ECF No. 42-7, and a post-hearing brief in which Plaintiff's counsel explicitly argued that SPS's conduct violated the RESPA dual tracking regulations, *see* Post-Hr'g Br., ECF No. 42-8 at 100–05, the Connecticut Superior Court denied Plaintiff's motion on June 17, 2019, after rejecting the dual tracking violation argument on the merits.  *See* ECF No. 42-8 at 180–83.  Specifically, the Superior Court reasoned that there was insufficient evidence supporting Plaintiff's dual tracking violation claim, as Plaintiff had not proven that she submitted a *complete* loss mitigation package, the prerequisite for triggering the dual tracking prohibition.  *Id.* at 180–81 ("[SPS] holding open the invitation to continue discussions at such a juncture is not prohibited by the dual tracking regulation unless [Rothermel] consistent with those discussions submits another complete loss mitigation package. There is no evidence that she had done so since her rejection of earlier loss mitigation options.").

Plaintiff litigated the issues in her motion to open the judgment through appeal.  In June of 2021, the Connecticut Supreme Court affirmed the Superior Court's decision, explaining that Plaintiff's failure to file a timely motion to open the judgment was not due to any misrepresentation by SPS or U.S. Bank, especially given that she was represented by counsel and her testimony

demonstrated that she was not confused by the letters from SPS.  *See U.S. Bank Nat'l Ass'n v. Rothermel*, 339 Conn. 366, 383–85 (2021) (agreeing with the trial court that Rothermel's conduct was "dilatory" and "cavalier").

In sum, in the present action, Plaintiff is pursuing the same claims, based on the same allegedly improper actions by SPS and U.S. Bank, that she has already fully litigated through appeal in the state courts.  Indeed, the dual tracking and failure to respond in writing claims in this action exactly mirror the arguments raised in the state action.  Plaintiff argues now, just as she argued then, that SPS and U.S. Bank violated RESPA regulations by misleading her into believing that the foreclosure would not proceed because they were in the process of negotiating the short payoff amount and that she never received a denial of her short payoff offer in writing.  The Connecticut Superior Court adjudicated the merits of Plaintiff's RESPA claims, finding that there was no validity to those claims, and the Connecticut Supreme Court ultimately affirmed the decision, finding that Plaintiff's arguments that she was misled by SPS were not well-founded.  Because both actions involve the same parties (and, in the case of SPS, a party in privity) and reiterate many of the same legal theories based on the same factual assertions, applying claim preclusion promotes judicial economy by preventing inconsistent judgments and by preventing Plaintiff from harassing U.S. Bank and SPS with a duplicative lawsuit.  Accordingly, Plaintiff's RESPA claim against SPS and U.S. Bank is barred by the doctrine of claim preclusion.

Even if Plaintiff's RESPA claims against U.S. Bank and SPS were not barred by claim preclusion, however, they would be barred by the applicable statute of limitations.  Plaintiff cites the federal regulations on dual tracking, 12 C.F.R. § 1024.41, and error resolution procedures, 12 C.F.R. § 1024.35, in her amended complaint, both of which may be enforced under 12 U.S.C. § 2605(f).  The statute of limitations for RESPA claims under § 2605 is "3 years . . . from the date

of the occurrence of the violation." 12 U.S.C. § 2614. The complained-of violations occurred in March of 2019, at the latest, which is more than four years before Plaintiff initiated the present federal action. Thus, the statute of limitations serves as an additional bar to Plaintiff's RESPA claims against U.S. Bank and SPS.

Because it would be futile for Plaintiff to attempt to amend a claim against U.S. Bank and SPS that is barred by both the doctrine of claim preclusion and the applicable statute of limitations, the RESPA claims as to U.S. Bank and SPS are dismissed without leave to amend.

### 2. *Attorney Cheverko*

The amended complaint contains very few allegations, if any, about Attorney Cheverko. Plaintiff does not make any specific allegations as to when the RESPA violations occurred, or how Attorney Cheverko was involved in these violations. It appears that the latest date that the RESPA dual tracking and failure to respond in writing violations could have occurred is March 12, 2019, the law day, after which title to Plaintiff's property vested in U.S. Bank. Attorney Cheverko did not appear in the Foreclosure Action until July 24, 2019, *see* ECF No. 39-4, which is well after the alleged RESPA violations occurred, and there are no allegations suggesting that Attorney Cheverko was involved in the negotiations between Plaintiff and U.S. Bank/SPS. As a result, because Plaintiff provides no facts from which the Court could plausibly infer that Attorney Cheverko was involved in the alleged RESPA violations, the Court finds that Plaintiff fails to state a RESPA claim against Attorney Cheverko.

Even if Plaintiff did allege that Attorney Cheverko was somehow involved in the RESPA violations, however, the statute of limitations for the RESPA claim expired before Plaintiff filed suit, as described above.

Accordingly, the RESPA claim against Attorney Cheverko is dismissed.  Because it would be futile for Plaintiff to attempt to amend a claim against Attorney Cheverko that is clearly time-barred, the RESPA claim as to Attorney Cheverko is dismissed without leave to amend.

### C.  FDCPA

Next, the Court dismisses Plaintiff's FDCPA claim.

Plaintiff alleges that Defendants obtained the foreclosure judgment "by fraud, misrepresentation and other misconduct" and filed for an emergency eviction as part of an orchestrated scheme to steal her house, in violation of the FDCPA.  The last judgment of strict foreclosure in the Foreclosure Action was obtained on February 19, 2019, and Plaintiff was evicted from the property by court order on November 29, 2022.

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C § 1692e.  In addition, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  *Id.* § 1692f.  Crucially, under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted *to be owed or due another*."  15 U.S.C. § 1692a(6) (emphasis added).  A "creditor," by contrast, is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed."  *Id.* § 1692a(4).  According to the amended complaint, U.S. Bank attempted to collect a debt owed directly to it, and did not use or attempt to use a name other than its own to collect its debt.  Therefore, U.S. Bank did not act as a debt collector under the FDCPA, and Plaintiff's FDCPA claim against U.S. Bank fails.  *See*

*Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("As a general matter, creditors are not subject to the FDCPA.").

Even assuming that U.S. Bank, Attorney Cheverko, and SPS are debt collectors within the meaning of the FDCPA, however, Plaintiff's claim fails to plead any facts suggesting an FDCPA violation occurred. The allegations that the foreclosure judgment and eviction order were procured through misrepresentation and unfair means are conclusory and do not describe who violated the FDCPA and which specific actions were misleading or unfair.

Moreover, if the FDCPA claim is premised on the commencement of foreclosure proceedings, RESPA violations, or the completion of the eviction process, it is time-barred. An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The complaint in the Foreclosure Action was filed on March 20, 2013. *See* ECF No. 42-3 at 3. The RESPA violations would have occurred, at the latest, on the law day, March 12, 2019. The eviction was ordered on November 29, 2022. ECF No. 42-11 at 2. All of these events occurred more than one year before Plaintiff raised her FDCPA claim in the amended complaint.[5] As a result, the FDCPA claim against Attorney Cheverko, U.S. Bank, and SPS is dismissed without leave to amend.

---

[5] Likewise, to the extent Plaintiff's FDCPA claim is premised on a violation of Connecticut's EMAP notice statute, Conn. Gen. Stat. § 8-265ee, it is time-barred under the FDCPA's statute of limitations. On July 15, 2021, Plaintiff, through counsel, moved to dismiss the Foreclosure Action for lack of subject matter jurisdiction on the ground that U.S. Bank failed to comply with Connecticut's EMAP notice statute, which requires a notice of intent to foreclose to be mailed to the borrower prior to commencing the foreclosure proceeding. Mot. to Dismiss, ECF No. 42-9 at 3, 6. Plaintiff argued that SPS and U.S. Bank's EMAP compliance affidavit, dated November 5, 2012, and filed on the Foreclosure Action docket on March 22, 2013, was false, as the EMAP notice attached to the affidavit falsely represented that it was sent via certified mail when it was never mailed to Plaintiff. *Id.* at 3, 8; ECF No. 42-3 at 4. At best, then, any FDCPA violation based on the EMAP affidavit accrued no later than March 22, 2013, well outside of the FDCPA's one-year statute of limitations.

D.  Section 1983

Next, Plaintiff's § 1983 claim fails because she has not alleged that any of the Defendants acted under color of state law.  *See* 42 U.S.C. § 1983 (providing for a cause of action against a person who, "under color of" law, deprives another of a constitutional right); *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014).  All of the Defendants are alleged to be private actors, not state actors.  To successfully state a § 1983 claim against a private actor, a plaintiff must "allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."  *Betts*, 751 F.3d at 84.

Here, Plaintiff's allegations fail to plausibly allege that any Defendant acted in concert with any state actor.  To be sure, U.S. Bank utilized the state judicial process to seek reformation and foreclosure of the mortgage on Plaintiff's home.  But "use by a private party of the state courts for litigation 'does not clothe persons who use its judicial processes with the authority of the state,' as contemplated under the § 1983 state action requirement."  *Kamasinski v. Rubin*, 764 F. Supp. 741, 743 (D. Conn. 1991) (quoting *Stevens v. Frick*, 372 F.2d 378, 381 (2d Cir. 1967)); *see also Secard v. Wells Fargo Bank, N.A.*, No. CV 15-499 (JS) (ARL), 2015 WL 6442563, at *3 (E.D.N.Y. Sept. 9, 2015) (dismissing § 1983 claim that "appears to allege that Defendants acted under color of state law by conspiring with the state court in the foreclosure action to deprive Plaintiff of his constitutional rights").  Plaintiff's allegations also do not suggest that any other Defendants acted in concert with any state actors.  Her § 1983 claim, whether it is based on a civil rights violation that Plaintiff fails to identify, extrinsic fraud, any of the other federal or state law violations alleged in the amended complaint, or all of the above, must therefore fail.  Thus, Plaintiff's Section 1983 claim is dismissed.

E.  Civil RICO

Plaintiff's civil RICO claim also fails.

Plaintiff alleges a civil RICO claim based on SPS and U.S. Bank's alleged EMAP violations, which she claims to be "predicate acts of mail fraud."  ECF No. 26 at 6.  In order to state a civil RICO claim, a plaintiff must show:  "(1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (cleaned up).  In turn, to plead a violation of 18 U.S.C. § 1962, a plaintiff must show:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.*  Additionally, "all allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."[6]  *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).

The Court concludes that Plaintiff's civil RICO claim against U.S. Bank, SPS, and Attorney Cheverko must be dismissed.  EMAP notices were allegedly sent to Plaintiff on March 19, 2012, May 18, 2012, June 18, 2012, and August 30, 2012.  *See* ECF No. 42-4 at 3–5.  Plaintiff fails to allege how Attorney Cheverko could have been involved in committing mail fraud, given that Attorney Cheverko did not appear in the Foreclosure Action until July 24, 2019, well after the EMAP notices were allegedly mailed.  *See* ECF No. 39-4.  And even assuming that U.S. Bank, SPS, and Attorney Cheverko acted as an enterprise—defined as "a group of persons associated together for a common purpose of engaging in a course of conduct," *see United States v. Turkette*, 452 U.S. 576, 583 (1981)—based on the fact that U.S. Bank was the mortgagor, SPS was the servicer on the loan, and Attorney Cheverko represented U.S. Bank in the Foreclosure Action, the

---

[6] Federal Rule 9(b) imposes additional heightened pleading requirements for actions alleging fraud.  In order to survive a motion to dismiss, an amended complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted).

amended complaint fails to plausibly plead a "pattern" of "racketeering activity." A "pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The acts constituting the pattern must be among the criminal offenses listed in § 1961(1), which include violations of the mail fraud statute, 18 U.S.C. § 1341, and the acts must be related and either amount to or pose a threat of continuing criminal activity. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).

Here, Plaintiff fails to identify how many predicate acts of mail fraud have occurred, when they occurred, and who committed them. She only alleges as follows: "predicate acts of mail fraud. EMAP General Statutes 8-265ee- Return Receipt Requested is missing from the Presort Mail. Nor was it sent certified as required by law. The Green card has no postmark, and my signature is forged." ECF No. 26 at 6, 7. Based on the exhibits Plaintiff has filed to demonstrate potential EMAP violations, the Court notes that only one potential act of mail fraud has been alleged, as all of these exhibits are connected to an EMAP notice with a Certified Mail tracking number ending in 0547. *See* Pl.'s EMAP Exs., ECF No. 29 at 4, 7, 9, 11–14. A single act of mail fraud does not establish a pattern of racketeering activity.

Even if Plaintiff is able to allege more than one act of mail fraud, though—for example, by alleging that the EMAP notices sent on March 19, 2012, May 18, 2012, June 18, 2012, and August 30, 2012, *see* ECF No. 42-4 at 3–5, constitute mail fraud—there is nothing in the amended complaint, Plaintiff's exhibits, or exhibits attached to the motions to dismiss that suggests the "continuing criminal activity" requirement can be met. This "so-called 'continuity' requirement can be satisfied either by showing a 'close-ended' pattern . . . or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*,

520 F.3d 178, 183 (2d Cir. 2008).  Plaintiff has not sufficiently alleged close-ended continuity, which requires predicate acts over a substantial period of time (not less than two years).  *Id.* at 184. The EMAP notices here were sent over a period of only five months.  Nor has Plaintiff established open-ended continuity, as there are no allegations that any of the Defendants regularly engage in mail fraud.  A vague and conclusory statement that there is a "practice and pattern of stealing homes" is not enough to meet the heightened pleading standard for a predicate act of fraud. Accordingly, as Plaintiff has failed to adequately allege a pattern of racketeering activity, her civil RICO claim against U.S. Bank, SPS, and Attorney Cheverko must be dismissed without leave to amend.

    F.  <u>TILA</u>

    The Court next dismisses Plaintiff's TILA claim.

    TILA was enacted to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  The statute imposes mandatory disclosure requirements on certain credit card and loan transactions and, additionally, creates a private right of action for damages for violations of its provisions.  *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016).  To be subject to TILA, a defendant must be a "creditor," which is defined as a person who "regularly extends . . . consumer credit," and "is the person to whom the debt arising from the consumer credit transaction is initially payable."  15 U.S.C. § 1602(g); *see also* 12 C.F.R. § 226.2(a)(17).  Plaintiff does not allege that she owed a debt to SPS or Attorney Cheverko, nor does she allege that either of them regularly extend credit.  Because SPS, the loan servicer for the creditor U.S. Bank, and Attorney Cheverko, an attorney who represented the creditor U.S. Bank

in the Foreclosure Action, are not "creditors" and thus not subject to TILA, Plaintiff's TILA claim against them must fail. *See Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 296 (D. Conn. 2015) (holding that loan servicers are not subject to TILA); *Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 157 (E.D.N.Y. 2010) (collecting cases and holding that attorneys that do not regularly extend credit do not qualify as "creditors" under TILA).

The TILA claim as to U.S. Bank also fails. It is undisputed that U.S. Bank is a creditor of the underlying mortgage loan and is therefore subject to TILA. *See* ECF No. 42-2 ¶ 3 (Foreclosure Action complaint alleging U.S. Bank is the assignee of the mortgage). Still, a private action for damages under TILA must be brought within one year of "the occurrence of the violation," except in circumstances not relevant here. 15 U.S.C. § 1640(e). "It is well-settled law that in closed-end credit transactions, like a mortgage loan, the date of the occurrence of the violation is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 (2d Cir. 2018) (cleaned up). Plaintiff entered into the loan agreement on September 15, 2006, and the mortgage was assigned to U.S. Bank on September 21, 2012. *See* ECF No. 42-2 ¶¶ 1, 3. Yet she did not assert her TILA claim until 2024 when she filed her amended complaint, many years after the one-year limitations period had expired.

As it is clear that it would be futile for Plaintiff to attempt to amend her TILA claim against U.S. Bank because it is time-barred and against SPS and Attorney Cheverko because they are not creditors under TILA, the TILA claim against these three Defendants is dismissed without leave to amend.

G.  Corporate Transparency Act

The Court likewise dismisses Plaintiff's claim under the CTA.  The CTA[7] requires certain entities formed under state law to disclose stakeholder information to the Department of Treasury in order to "prevent financial crimes like money laundering and tax evasion, which are often committed through shell corporations."  *See Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260, 1266 (N.D. Ala. 2024); Corporate Transparency Act, Pub. L. No. 116-283, 134 Stat. 3388, §§ 6401–03 (2021) (codified as amended at 31 U.S.C. § 5336).  As a threshold matter, Plaintiff's only allegation in connection with the CTA appears to accuse a corporation called "Bald Hill LLC" for being a shell corporation used to "disguise ownership by bad actors in the acquisition of real estate that could involve money laundering."  ECF No. 26 at 8.  The amended complaint alleges no facts as to Bald Hill LLC's compliance with the CTA's disclosure requirements, nor does it specify how Bald Hill LLC is connected to any of the parties in the action.  The CTA claim against U.S. Bank, SPS, and Attorney Cheverko therefore fails to state a claim.

Moreover, repleading would be futile because the CTA does not appear to create a private right of action, which is "[a]n individual's right to sue in a personal capacity to enforce a legal claim."  *Right of Action*, Black's Law Dictionary (12th ed. 2024).  "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Without congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.* at 286–87.  The question of "whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction."  *Transamerica Mortg. Advisors, Inc.*

---

[7] The law's constitutionality has been challenged in multiple jurisdictions, and courts have reached different conclusions on this issue.  *See Smith v. U.S. Dep't of Treasury*, --- F. Supp. 3d ---, No. 6:24-cv-336 (JDK), 2025 WL 41924, at *1–2 (E.D. Tex. Jan. 7, 2025) (collecting cases and holding that the CTA is unconstitutional).

*(TAMA) v. Lewis*, 444 U.S. 11, 15 (1979).  Nothing in the statute suggests that Congress intended for the CTA to provide a cause of action.  Instead, the CTA creates reporting requirements to the Financial Crimes Enforcement Network of the Department of the Treasury, 31 U.S.C. § 5336(b)(1)(A), and provides for civil penalties to be paid to the United States for violations, along with criminal penalties.  *See id.* § 5336(h)(3).  The statute does not explicitly provide a private right of action or use any rights-creating language.  In addition, the language of the statute "focus[es] on the person regulated rather than the individuals protected," which creates "no implication of an intent to confer rights on a particular class of persons."  *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).  Nor does the legislation history imply that Congress intended to create a private right of action.  *See* § 6402(5), 132 Stat. at 4604 (discussing the need for a statute like the CTA to, *inter alia*, protect national security interests, protect foreign and interstate commerce, and counter money laundering).

As no private right of action exists under the CTA, Plaintiff's CTA claim against U.S. Bank, SPS, and Attorney Cheverko is dismissed without leave to amend.

H.  New Federal Claims Raised in Opposition Briefing

In her opposition papers, Plaintiff appears to raise the following new federal causes of action:  (1) violations of federal criminal statutes for conspiracy, 18 U.S.C. § 241, under the color of law, *id.* § 242; and (2) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125.  *See* ECF No. 51 at 1; ECF No. 98 at 1; ECF No. 99 at 3.  Again, while a party ordinarily cannot raise a new claim in opposition to a motion to dismiss, the Court considers whether either claim can proceed.  It concludes they cannot.

First, with respect to Plaintiff's allegations of criminal conspiracy, as the Court explained in its order dismissing the original complaint, *see* ECF No. 24, "[f]ederal criminal statutes do not

provide private rights of action." *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (collecting cases). Therefore, Plaintiff may not and cannot bring claims under federal criminal statutes in a personal capacity to enforce a legal right.

Plaintiff's false advertising claim under the Lanham Act is alleged against an individual named Brian Hunter, who is not a party to the action. It must therefore be dismissed. Even if Hunter were added to the action, Plaintiff cannot bring a claim under the Lanham Act, as her alleged injury is not considered an "injury to a commercial interest in reputation or sales." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014) (holding that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales"). Accordingly, Plaintiff cannot proceed with a federal false advertising claim.

## IV.    REMAINING STATE LAW CLAIMS

Having dismissed all of Plaintiff's claims under federal law without leave to amend, the Court now faces the question of whether to exercise supplemental jurisdiction over Plaintiff's state law claims of extrinsic fraud, aiding and abetting fraud, civil conspiracy to commit fraud, and violations of CUTPA alleged in her amended complaint, and the state law claims for breach of contract with intent to defraud, breach of notice of acceleration provisions, and intentional infliction of emotional distress raised in her opposition briefing. *See* ECF No. 51 at 3; ECF No. 99 at 2.

Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which outlines the circumstances under which claims that independently cannot qualify for federal jurisdiction can nonetheless be heard in federal court. Specifically, 28 U.S.C. § 1367(c)(3) allows for a district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed

all claims over which it has original jurisdiction.  As the parties have not briefed this issue, however, the Court declines to consider whether it should invoke supplemental jurisdiction in order to afford the parties notice and opportunity to be heard.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir. 2018) (reversing and remanding a district court's decision to *sua sponte* decline to exercise supplemental jurisdiction as a "district court's failure to provide an opportunity to be heard prior to a *sua sponte* dismissal . . . is, by itself, grounds for reversal").

As a result, the parties will be afforded the opportunity to brief whether the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The motions to dismiss as to the remaining claims shall be decided after the Court determines whether it will retain supplemental jurisdiction over them.

In sum, the motions to dismiss filed by Defendants Cheverko, U.S. Bank, and SPS are granted in part as to Plaintiff's federal law claims and quiet title claim, without leave to amend, and the motion to dismiss filed by U.S. Bank related to insufficient service of process and lack of personal jurisdiction is denied, without prejudice to renewal.

\* \* \*

## CROSS MOTIONS FOR SUMMARY JUDGMENT

Having found that the claims against SPS, U.S. Bank, and Attorney Cheverko should be dismissed without leave to amend, the Court next addresses Plaintiff's and Mezzo's cross motions for summary judgment.[8]

---

[8] Defendant Mezzo likewise did not comply with the Local Rules in filing his motion for summary judgment.  *See* Order, ECF Nos. 88, 92.  The Court therefore afforded Plaintiff additional time to amend her response to Mezzo's cross motion for summary judgment, setting a deadline of March 3, 2025.  *See* ECF Nos. 88, 92.  Plaintiff timely filed an affidavit to amend her response to Mezzo's summary judgment motion, *see* Pl.'s Aff., ECF No. 97, which the Court has considered for this ruling.

For the reasons that follow, the Court denies in part Plaintiff's motion for summary judgment and grants in part Mezzo's motion.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with

evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Anderson*, 477 U.S. at 250–51).

Although it is "well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," a court may enter summary judgment against a *pro se* nonmovant who has been advised of the nature of the motion for summary judgment and the consequences of failing to respond to it properly. *Tracy*, 623 F.3d at 101–02; *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

## II.    DISCUSSION

First, to the extent that Plaintiff requests summary judgment through her motion as to the federal law claims and quiet title claim against SPS, U.S. Bank, and Attorney Cheverko, the motion is denied as moot because the Court has dismissed those claims without leave to amend. To the extent that Plaintiff requests summary judgment as to the remaining state law claims against all Defendants, the Court declines to render a decision on the remaining claims pending additional briefing from the parties regarding whether the Court should exercise supplemental jurisdiction.

As to the federal law claims and quiet title claim against Mezzo, the Court denies Plaintiff's motion and grants Mezzo's motion for reasons similar to those articulated above in the Court's ruling on the motions to dismiss.  The Court addresses each of Plaintiff's federal law claims and quiet title claim below, including the federal claims first raised in her opposition filings.  These claims against Mezzo are legally insufficient.

The Court lacks subject matter jurisdiction over any claim for quiet title brought against Mezzo.

To the extent Plaintiff's RESPA, FDCPA, and TILA claims are alleged against Mezzo, they are dismissed as the statutes of limitations had already expired by the time the claims were raised.  Moreover, there are no allegations suggesting that Mezzo was involved in the alleged RESPA violations, or that he was acting as a "debt collector" under the FDCPA, or that he was a "creditor" under TILA.

Plaintiff's Section 1983 claim against Mezzo is dismissed as there is no genuine dispute of fact that Mezzo was not acting in concert with any state actor.

Plaintiff's civil RICO claim against Mezzo is dismissed because Plaintiff fails to raise any factual allegations demonstrating a pattern of racketeering activity in which Mezzo had any involvement.

To the extent Plaintiff's CTA claim and claims brought under federal criminal statutes are alleged against Mezzo, they are dismissed because the CTA and federal criminal statutes do not provide private rights of action.

Finally, for the reasons explained above, Plaintiff cannot state a false advertising claim under the Lanham Act against Mezzo.

Accordingly, Plaintiff's motion for summary judgment is denied in part and Mezzo's motion for summary judgment is granted in part as to Plaintiff's federal law claims and quiet title claim against Mezzo. The motions for summary judgment as to the state law claims will be decided following additional briefing from the parties.

## <u>CONCLUSION</u>

For the reasons described herein, the Court GRANTS in part Attorney Cheverko's motion to dismiss, ECF No. 39; GRANTS in part and DENIES in part U.S. Bank and SPS's motion to dismiss, ECF No. 42; GRANTS in part Mezzo's motion for summary judgment, ECF No. 76; and DENIES in part Plaintiff's motion for summary judgment, ECF No. 67. All of Plaintiff's federal law claims, as well as her quiet title claim, are dismissed without leave to amend. The motions to dismiss and cross motions for summary judgment as to Plaintiff's remaining state law claims shall be decided after the Court determines whether it will retain supplemental jurisdiction over the remaining claims.

* * *

The Court enters the following orders:

(1) By April 11, 2025, the parties shall file concurrent briefing on whether the Court should exercise supplemental jurisdiction over Plaintiff's state law claims.  Each brief shall be no more than ten pages.

(2) By April 11, 2025, Plaintiff must file proof of proper service on U.S. Bank. Plaintiff is reminded that the Court will not permit further extension of this deadline, and will dismiss the remaining state law claims against U.S. Bank if the deadline is not met.

**SO ORDERED** at Hartford, Connecticut, this 28th day of March, 2025.

  _/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE