## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAROL ROTHERMEL, | ) | 3:23-cv-1329 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| AS TRUSTEE ON BEHALF OF THE | ) | |
| HOLDERS OF THE ADJUSTABLE- | ) | |
| RATE MORTGAGE TRUST 2007-1, | ) | |
| ADJUSTABLE-RATE MORTGAGE- | ) | |
| BACKED PASS-THROUGH | ) | |
| CERTIFICATES SERIES 2007-1, *et al.* | ) | |
| *Defendants*. | ) | July 25, 2025 |

### SUPPLEMENTAL RULING ON DEFENDANTS' MOTIONS TO DISMISS, CROSS MOTIONS FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Sarala V. Nagala, United States District Judge.

In this action, *pro se* Plaintiff Carol Rothermel alleged violations of several federal, state, and common law rights stemming from the actions of Defendants U.S. Bank National Association, as Trustee on Behalf of the Holders of the Adjustable-Rate Mortgage Trust 2007-1, Adjustable-Rate Mortgage-Backed Pass-Through Certificates Series 2007-1 ("U.S. Bank"); Select Portfolio Servicing ("SPS"); Geraldine A. Cheverko ("Attorney Cheverko"); and John L. Mezzo in connection with the foreclosure of Plaintiff's home located at 104 Bald Hill Road in New Canaan, Connecticut. On March 28, 2025, the Court issued a ruling dismissing all of Plaintiff's federal claims, as well as her quiet title claim, without leave to amend. *Rothermel v. U.S. Bank Nat'l Ass'n, as Tr., ex rel. Holders of Adjustable-Rate Mortg. Trust 2007-1, Adjustable-Rate Mortg.-Backed Pass-Through Certificates Series 2007-1*, No. 3:23-cv-1329 (SVN), 2025 WL 950718 (D. Conn. Mar. 28, 2025). Because the parties had not briefed the issue of supplemental jurisdiction, however, the Court declined to consider whether it should invoke supplemental jurisdiction over

Plaintiff's remaining state law claims, in order to afford the parties notice and opportunity to be heard. *Id.* at *19. Plaintiff was also given the opportunity to cure defective service on U.S. Bank. *Id.* at *8. On June 30, 2025, Plaintiff filed a motion for leave to amend the complaint. Pl.'s Mot. Amend Compl., ECF No. 116. Pending before the Court are the parties' supplemental briefing regarding supplemental jurisdiction and Plaintiff's motion for leave to amend.

For the reasons that follow, the Court will exercise supplemental jurisdiction over Plaintiff's remaining state law claims, GRANTS in part U.S. Bank and SPS's motion to dismiss, GRANTS in part Attorney Cheverko's motion to dismiss, GRANTS in part Mezzo's motion for summary judgment, DENIES in part Plaintiff's motion for summary judgment, and DENIES Plaintiff's motion for leave to amend.

## I.    PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with its earlier ruling on the motions to dismiss and the cross motions for summary judgment. *Rothermel*, 2025 WL 950718. Accordingly, the Court discusses only the additional procedural background necessary for this ruling.

As relevant here, the amended complaint appeared to allege that, through a series of actions, U.S. Bank, SPS, Attorney Cheverko, and Mezzo, worked collectively to unlawfully and fraudulently foreclose on Plaintiff's home. *See* Am. Compl., ECF No. 26. After reviewing the parties' briefing, the Court granted in part Attorney Cheverko's motion to dismiss, granted in part and denied in part U.S. Bank and SPS's motion to dismiss, granted in part Mezzo's motion for summary judgment, and denied in part Plaintiff's motion for summary judgment. *Rothermel*, 2025 WL 950718, at *1. Specifically, the Court granted the motions to dismiss and Mezzo's motion for summary judgment and denied Plaintiff's motion for summary judgment as to Plaintiff's federal law claims and quiet title claim, which were dismissed without leave to amend. *Id.* The Court

also denied U.S. Bank's motion to dismiss as to lack of personal jurisdiction and insufficient service of process, and although it agreed with U.S. Bank that service was defective, the Court exercised its discretion to extend the service deadline so that Plaintiff may properly serve U.S. Bank. *Id.* at *8. As the parties did not brief the issue of supplemental jurisdiction, the Court declined to decide Plaintiff's remaining state law claims and set a deadline for the parties to submit supplemental briefing on the issue. *Id.* at *17–18.

All parties in the action have requested that the Court exercise supplemental jurisdiction over Plaintiff's remaining state law claims and to decide them on the merits. *See* Pl.'s Suppl. Br., ECF No. 108[1]; SPS, U.S. Bank & Cheverko Suppl. Br., ECF No. 109; Mezzo Suppl. Br., ECF No. 110.[2] Additionally, following an additional extension of the service deadline, Plaintiff filed proof of proper service on U.S. Bank on April 18, 2025. *See* Proof of Service, ECF No. 112.

On June 6, 2025, Plaintiff filed a second amended complaint, adding several new defendants and new claims. Second Am. Compl., ECF No. 113. Because the second amended complaint was filed nearly a year after the first motion to dismiss was filed, without Defendants' consent, and without leave from the Court, the Court declined to consider it. *See* Order, ECF No. 114. On June 30, 2025, Plaintiff filed a motion for leave to amend the complaint that proposes adding new defendants and new claims, but she has not attached a proposed third amended complaint. *See* ECF No. 116.

---

[1] Although Plaintiff titled her supplemental brief, "PLAINTIFF SUPPORTS THE COURT'S SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS," the body of the filing fails to discuss supplemental jurisdiction despite clear instructions from the Court, and veers off course into making factual assertions about the foreclosure on her property. *See* ECF No. 108 at 1. Plaintiff even continues raising federal claims that the Court unequivocally dismissed without leave to amend. *See id.* at 2. Because the Court has already considered the federal claims, will consider the state law claims that Plaintiff raised in filings submitted after the amended complaint, and will rule on Plaintiff's motion for leave to amend, the Court will not consider any new claims raised in the supplemental brief, to the extent there are any, as the supplemental briefing is not the appropriate place to raise new claims.

[2] Plaintiff filed an opposition to Mezzo's supplemental brief, ECF No. 111, which the Court declines to consider because the Court did not authorize any responses to the supplemental briefing. In any case, Plaintiff's opposition brief does not discuss supplemental jurisdiction at all.

## II.    SUPPLEMENTAL JURISDICTION

Having dismissed all of Plaintiff's claims under federal law, the Court must decide whether to exercise supplemental jurisdiction over the remaining state law claims.

A district court has supplemental jurisdiction over claims that "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  For purposes of § 1367(a), claims form part of the "same case or controversy" if they "derive from a common nucleus of operative fact."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

If the claims form part of the same case or controversy, a district court retains discretion to decline to exercise supplemental jurisdiction only in certain limited circumstances:  when the state law claims raise novel or complex issues of state law; when such claims substantially predominate over the claims or the claims over which the district court has original jurisdiction; when the district court has dismissed all claims over which it has original jurisdiction; and, in exceptional circumstances, when there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c); *Shahriar*, 659 F.3d at 245 ("[T]he discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c).").  Even where one of the § 1367(c) factors is applicable, however, a district court "should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity."  *Shahriar*, 659 F.3d at 245 (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)) (citation omitted).

Although all of the claims over which this Court has original jurisdiction have been dismissed, the Court will exercise jurisdiction over the state law claims asserted in the amended complaint and in Plaintiff's oppositions to the motions to dismiss.  All of Plaintiff's claims arise from the same general nucleus of operative fact related to the foreclosure on Plaintiff's property.  In their supplemental briefing, all parties have urged the Court to exercise supplemental jurisdiction.  *See* ECF Nos. 108, 109, 110.  The underlying foreclosure proceeding ("Foreclosure Action") was filed over a decade ago, and this case has been pending in this Court since October of 2023.  Having already resolved several dispositive motions in this action, this Court is also familiar with the facts of this case and the Foreclosure Action.  Considerations of economy, convenience, fairness, and comity weigh in favor of exercising supplemental jurisdiction, rather than requiring the parties to start over in state court.

Thus, the Court finds that it is appropriate to exercise jurisdiction over Plaintiff's state law claims of "extrinsic fraud," aiding and abetting fraud, civil conspiracy to commit fraud, and violations of CUTPA.  It likewise finds it appropriate to exercise supplemental jurisdiction over the new state law claims alleged in Plaintiff's oppositions to the motions to dismiss for breach of contract with intent to defraud, breach of notice of an acceleration provision, and intentional infliction of emotional distress.

## III.    MOTIONS TO DISMISS

The Court finds that all of the remaining state law claims as to U.S. Bank, SPS, and Attorney Cheverko must be dismissed without leave to amend.

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed

allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

These pleading standards apply to self-represented parties.  It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest."  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).  But at the same time, a *pro se* complaint must meet the basic

pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

B. Fraud Claims

Plaintiff alleges that Defendants have committed "extrinsic fraud," aided and abetted fraud, and had a civil conspiracy to commit fraud. *See generally* ECF No. 26. The amended complaint, however, fails to allege anything beyond legal definitions and conclusory statements that "[t]he defendant procured the judgment of foreclosure and sale by fraud, misrepresentation and other misconduct" and that violations of the Emergency Mortgage Assistance Program ("EMAP") notice statute, characterized as "predicate acts of mail fraud," occurred. *Id.* at 7. Because the Court must extend special solicitude to Plaintiff's amended complaint and ought to read it to raise the strongest argument it suggests because she is proceeding *pro se*, the Court assumes that Plaintiff's fraud claim is based in part on the facts underlying Plaintiff's claims for violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the EMAP notice statute. *See Fowlkes*, 790 F.3d at 387. The Court also considers the new factual allegations raised in Plaintiff's oppositions to the motions to dismiss. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion."). Finally, in order to evaluate the plausibility of Plaintiff's fraud allegations, the Court takes judicial notice of state court documents relating to the Foreclosure Action. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (courts may take "judicial notice of relevant matters of public record"); *HSBC Bank USA, Nat'l Ass'n as Tr. for Opteum Mortg. Acceptance Corp. Asset-Backed Pass-Through Certificates Series 2005-2 v. Vitti*, No. 3:21-cv-1221 (SRU), 2021 WL 4810578, at *1 n.1 (D. Conn. Oct. 15, 2021) (taking judicial notice of underlying foreclosure action); *see also Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014) ("Dismissal

is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000))).

The elements of a common law fraud action[3] are: "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D. Conn. 2010) (quoting *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005)). Additionally, Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements for "the circumstances constituting fraud" apply to Connecticut common law fraud claims. *Loubier v. Allstate Ins. Co.*, No. 3:09-CV-261 (JBA), 2010 WL 1279082, at *5 (D. Conn. Mar. 30, 2010). In order to survive a motion to dismiss, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted).

---

[3] Plaintiff refers to "[e]xtrinsic fraud on the court," which she defines as "a wrongful act committed by the party or parties who engaged in the fraud." ECF No. 26 at 6, 7. The Court construes Plaintiff's "extrinsic" fraud claim as a common law fraud claim because "[e]xtrinsic fraud on the court" is not a basis for a tort claim in Connecticut. *See Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*, 260 Conn. 766, 779 (2002) (defining "fraud on the court" to mean "fraudulent representations to a court" or "caus[ing] some court to be misled in some way"); *id.* at 780 (holding that there is no common law cause of action on the basis of "fraud on the court"; *see also Francis T. Zappone Co. v. Plymouth Commons Realty Grp.*, No. CV02-0820681-S, 2007 WL 3257525, at *6 (Conn. Super. Ct. Oct. 10, 2007) (describing "extrinsic" fraud as "fraud preventing the moving party from fully presenting his claim or defense at trial"). Rather, "fraud on the court" is a procedure by which a party seeks equitable review of the judgment allegedly obtained by fraud. *See Suffield Dev. Assocs.*, 260 Conn. at 779. As the Court explained in its prior ruling, it does not have the power to review state court judgments under the *Rooker-Feldman* doctrine. *Rothermel*, 2025 WL 950718, at *5 (dismissing quiet title claim for lack of subject matter jurisdiction).

1.  *Foreclosure Judgment*

The Court concludes that Plaintiff fails to plausibly plead that U.S. Bank, SPS, or Attorney Cheverko engaged in fraud in order to commence the Foreclosure Action and obtain the judgment of strict foreclosure.  Plaintiff alleges now, just as she alleged when she was litigating the Foreclosure Action, that SPS misled her into believing that the strict foreclosure of her property would not move forward and that U.S. Bank and SPS's affidavit certifying EMAP compliance[4] was fraudulent.  *See Rothermel*, 2025 WL 950718, at *2–3, *10–12, *12 n.5.  The Court refers to this fraud claim as the "foreclosure judgment fraud claim."

With respect to Attorney Cheverko, Plaintiff's foreclosure judgment fraud claim fails to meet the heightened pleading requirements for actions alleging fraud.  *See* Fed. R. Civ. P. 9(b). The Court already held in its prior ruling that Plaintiff fails to allege that Attorney Cheverko was involved in the negotiations between Plaintiff and U.S. Bank/SPS that allegedly misled Plaintiff into believing that the strict foreclosure of her property would not move forward.  *Rothermel*, 2025 WL 950718, at *12 (dismissing RESPA claims against Attorney Cheverko, which were brought because Plaintiff, SPS, and U.S. Bank were allegedly in the process of negotiating the short payoff amount to refinance her mortgage when the law day of March 12, 2019, passed).  Moreover, Plaintiff does not mention Attorney Cheverko at all in any factual allegation that could reasonably be connected to the allegedly fraudulent EMAP compliance affidavit.  *Cf. id.* at *13 (dismissing civil RICO claim against Attorney Cheverko because the EMAP notices were mailed well before Attorney Cheverko appeared in the Foreclosure Action).  Thus, the foreclosure judgment fraud claim against Attorney Cheverko fails as a matter of law.

---

[4] Connecticut's EMAP notice statute, Conn. Gen. Stat. § 8-265ee, requires a notice of intent to foreclose to be mailed to the borrower prior to commencing the foreclosure proceeding.

Furthermore, any fraud claim based on the allegations that SPS and U.S. Bank misled Plaintiff into believing that the foreclosure would not proceed, because they were in the process of negotiating the short payoff amount and she never received a denial of her short payoff offer in writing, is barred by *res judicata* (claim preclusion). The doctrine of claim preclusion applies to facts and issues decided in the state proceeding, as well as to claims that were not raised during the prior proceeding even though they could have been raised. *Powell v. Infinity Ins. Co.*, 282 Conn. 594, 600 (2007); *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009). As the Court explained in its prior ruling, the Connecticut Superior Court found, and the Connecticut Supreme Court affirmed, that "Plaintiff's failure to file a timely motion to open the [foreclosure] judgment was *not due to any misrepresentation by SPS or U.S. Bank*, especially given that she was represented by counsel and her testimony demonstrated that she was not confused by the letters from SPS." *Rothermel*, 2025 WL 950718, at *11 (emphasis added) (citing *U.S. Bank Nat'l Ass'n v. Rothermel*, 339 Conn. 366, 383–85 (2021)).

Similarly, a foreclosure judgment fraud claim based on the EMAP issues in the present action—that SPS and U.S. Bank's EMAP compliance affidavit was fraudulent because it includes exhibits of EMAP notices that were never mailed and a certified mail receipt bearing Plaintiff's forged signature—is barred by claim preclusion. It is nearly identical to the claim raised in Plaintiff's July 15, 2021, motion to dismiss the Foreclosure Action. Plaintiff argued, through counsel, that SPS and U.S. Bank failed to comply with the EMAP notice requirement, Conn. Gen. Stat. § 8-265ee, because the EMAP compliance affidavit, dated November 5, 2012, falsely represented that the EMAP notice was sent via certified mail when it was never mailed to Plaintiff. ECF No. 42-9 at 3, 8 (noting that an inquiry into the EMAP notice's tracking number on the United States Postal Service website performed on July 8, 2021, showed "Label Created, not yet in

system" and did not indicate that it was delivered).  The Connecticut Superior Court denied Plaintiff's motion to dismiss the Foreclosure Action, as the EMAP affidavit had been part of the record in the Foreclosure Action since 2013; final judgment had already been rendered; Plaintiff had the opportunity to litigate U.S. Bank's allegation of EMAP compliance prior to the entry of judgment and failed to do so; and there was no "independent validity" to Plaintiff's arguments. *US Bank, NA v. Rothermel*, No. FST-CV13-6017616-S, 2021 WL 5277569, at *2, 3 (Conn. Super. Ct. Oct. 20, 2021) ("It is of no matter that currently no delivery information is available from the postmaster as the information is only stored by the post office for two years and the delivery was over two years ago.").  Even though the court did not consider Plaintiff's theory that her signature was forged on the certified mail receipt, it had already determined that Plaintiff failed to demonstrate SPS and U.S. Bank's noncompliance with the EMAP notice statute.  *See Caro v. Fidelity Brokerage Servs.*, No. 3:14-cv-1028 (CSH), 2015 WL 1975463, at *18 (D. Conn. Apr. 30, 2015) ("Claim preclusion prevents parties and those in privity with them from raising legal theories, claims for relief, or defenses which could have been raised in the prior litigation, even though such claims were never actually litigated in the prior case." (quoting 18 Moore's Federal Practice § 131.13 (Matthew Bender 3d ed.))).

### 2.  Eviction and Sale

Next, the Court concludes that Plaintiff fails to sufficiently allege that U.S. Bank, SPS, or Attorney Cheverko engaged in fraud in order to evict Plaintiff from her property and sell it. Plaintiff alleges, in her opposition briefs, that Attorney Cheverko, in her capacity as counsel for U.S. Bank and SPS in the Foreclosure Action, retained Attorney Daniel Glass who "fraudulently sign[ed] off on a "[sic] bogus emergency eviction of the Plaintiff's home in violation of state law," which requires a two-week notice period prior to eviction, and despite a court order that "no

eviction could take place until all appeals were extinguished." *See* Pl.'s Opp'n to Cheverko Mot., ECF No. 51 at 2; Pl.'s Aff., ECF No. 98 at 2. Such a claim fails as a matter of law because Plaintiff does not allege that U.S. Bank, SPS, or Attorney Cheverko *themselves* made a false representation, that a false representation was even made to Plaintiff, or that Plaintiff acted in reliance on the false representation. *See Suffield Dev. Assocs.*, 260 Conn. at 777–78 (where the plaintiff fails to allege any of the elements of a common law fraud claim, it cannot proceed). All of Plaintiff's allegations regarding the eviction and sale relate to conduct by actors who are not U.S. Bank, SPS, or Attorney Cheverko.

### 3.   Civil Conspiracy and Aiding and Abetting Fraud

Connecticut law does not recognize an independent claim of civil conspiracy. *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636 (2006). "Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Id.* (quoting *Harp v. King*, 266 Conn. 747, 779 n.37 (2003)). Additionally, "[a]s with civil conspiracy, plaintiffs alleging aiding and abetting liability must prove an underlying tort that defendants allegedly facilitated." *Master-Halco, Inc.*, 739 F. Supp. at 121.

Given that Plaintiff's fraud claim against U.S. Bank, SPS, and Attorney Cheverko has been dismissed, there is no underlying tort on which her claims for civil conspiracy to defraud and aiding and abetting fraud can rely. As civil conspiracy and aiding and abetting fraud are not independent claims, they are necessarily dismissed as well as to these three Defendants.

In sum, the Court grants U.S. Bank, SPS, and Attorney Cheverko's motions to dismiss the fraud claim. Because it would be futile for Plaintiff to attempt to amend a claim that is either

barred by *res judicata* or fails as a matter of law, the fraud, civil conspiracy, and aiding and abetting fraud claims as to U.S. Bank, SPS, and Attorney Cheverko are dismissed without leave to amend.

C.  CUTPA

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  To state a claim for a violation of CUTPA, a plaintiff must establish that "(1) the defendant was acting in trade or commerce; (2) that the defendant engaged in unfair or deceptive acts; and (3) that such unfair or deceptive acts cause the plaintiff to suffer an ascertainable loss."  *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 275 (D. Conn. 2017).  Plaintiff claims that Defendants violated CUTPA because they were "orchestrating a scheme to steal [her] property" and SPS was "engag[ing] in systematic misrepresentations, delays and evasiveness over several years of post-default mortgage enforcement conduct."  ECF No. 26 at 7.  As the Court has discussed in the context of Plaintiff's fraud claim above and the numerous federal law claims in the prior ruling, *see Rothermel*, 2025 WL 950718, at *10–15, Plaintiff has not identified any unfair or deceptive act on the part of U.S. Bank, SPS, or Attorney Cheverko.  Rather, it appears that these three Defendants engaged in routine foreclosure proceedings and default actions in foreclosing on Plaintiff's property.  For these reasons, the Court finds that Plaintiff's CUTPA cause of action as to U.S. Bank, SPS, and Attorney Cheverko fails to state a claim, and is dismissed without leave to replead.

D.  New Claims Raised in Opposition Briefing

In her opposition papers, Plaintiff appears to raise the following new causes of action under state law:  (1) breach of contract with intent to defraud; (2) breach of notice of acceleration provision; and (3) intentional infliction of emotional distress ("IIED").  *See* ECF No. 51 at 3; Pl.'s Opp'n to U.S. Bank & SPS Mot., ECF No. 99 at 2.  Although a plaintiff normally may not make new factual allegations and raise new claims for the first time in her opposition briefing, because

Plaintiff is proceeding *pro se*, the Court will nevertheless consider these new facts "to the extent that they are consistent with the [amended] complaint" and consider the new claims because they are being asserted based on the facts alleged in the amended complaint. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267–68 (S.D.N.Y. 2018) (collecting cases).

First, the claim for breach of contract with intent to defraud must be dismissed for the reasons discussed above in the context of Plaintiff's other claims. Plaintiff brings this claim alleging facts similar to those stated in her amended complaint, except this time, she alleges she had entered into a *short sale agreement*—rather than engaged in *short payoff offer* discussions— for $500,000—rather than $575,000—with SPS that SPS breached when it foreclosed on her home. *Compare* ECF No. 26 at 5 *with* ECF No. 99 at 1; *see also* ECF No. 108 at 1–2 (claiming instead that Plaintiff and SPS "entered into a *sales* contract for $500,000" and also referring to a "Short Payoff contract"). She also adds that a short payoff offer was in progress in *2018*, but "thereafter[,] the house was sold to Defendant John Mezzo in *2015*," and that "[t]his is contractual breach of contract." ECF No. 99 at 1. It is not possible to breach a contract three years prior to its formation, if the contract even existed at all. There is no mention of a short sale agreement that existed before Mezzo allegedly purchased her home in 2015, and Plaintiff testified under oath that there was no short sale agreement with SPS; only that SPS never denied her short payoff offer. *See* ECF No. 42-7 at 37. It is clear to the Court that SPS made a *counteroffer* in October of 2018 in response to Plaintiff's $500,000 short payoff offer. *See* ECF No. 42-8 at 107. This contradicts Plaintiff's allegation that the "original Short Sale Agreement was canceled," *see* ECF No. 99 at 3, because SPS never accepted her $500,000 short payoff offer and thus a contract related to that short payoff offer was never formed. Indeed, Plaintiff's testimony suggests that no contract for the short payoff offer was ever made, as she testified that she thought the March 12, 2019, law day

would not happen because she thought she was *going to get* the short payoff offer. *See* ECF No. 42-7 at 38. As Plaintiff has not identified any contract that was breached and given the inconsistencies in Plaintiff's story about the alleged contract, the Court finds that her breach of contract claim against U.S. Bank, SPS, and Attorney Cheverko is futile for failure to state a claim.

Second, the Court will not entertain the breach of the notice of acceleration provision claim made for the first time in her opposition filings, as the amended complaint alleges no facts and provides no details as to the notice of acceleration provision. Plaintiff's motion to dismiss responses are similarly bereft of any details regarding the provision, what the text of the provision says, when it was breached or how it was breached.

Finally, Plaintiff fails to state an IIED claim. To state a claim for IIED, Plaintiff must plausibly allege: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Strano v. Azzinaro*, 188 Conn. App. 183, 187 (2019). To start, Plaintiff fails to allege any facts identifying the conduct that caused emotional distress. Moreover, Plaintiff does not specify the nature or severity of the distress she suffered as a result of any Defendant's conduct. *See Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998) ("Mere conclusory allegations are insufficient as a matter of law to support a cause of action for [IIED].").

Additionally, to the extent Plaintiff's IIED claim is based on SPS, U.S. Bank, and Attorney Cheverko's conduct during the course of the Foreclosure Action, it is barred under the litigation privilege doctrine. *See Dorfman v. Smith*, 342 Conn. 582, 592 (2022) (noting that "absolute immunity extends to an array of retaliatory civil actions," including "intentional infliction of

emotional distress arising from statements made during judicial proceedings"); *Simms v. Seaman*, 308 Conn. 523, 570 (2013) (holding that litigation privilege barred a plaintiff's claim of intentional infliction of emotional distress); *Stone v. Pattis*, 144 Conn. App. 79, 99 (2013) ("We conclude . . . that the allegations supporting [the] claim of negligent infliction of emotional distress are based on communications protected by absolute immunity from suit."). Thus, Plaintiff's IIED claim may not proceed.

In sum, all remaining claims against U.S. Bank, SPS, and Attorney Cheverko are dismissed without leave to amend.

## IV.    CROSS MOTIONS FOR SUMMARY JUDGMENT

For the reasons that follow, the Court denies in part Plaintiff's motion for summary judgment and grants in part Mezzo's motion.

### A.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Anderson*, 477 U.S. at 250–51).

Although it is "well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), a court may enter summary judgment against a *pro se* nonmovant who has been advised of the nature of the motion for summary judgment and the consequences of failing to respond to it properly. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

B.  Discussion

First, to the extent that Plaintiff requests summary judgment through her motion as to the remaining state law claims against U.S. Bank, SPS, and Attorney Cheverko, the motion is denied as moot because the Court has dismissed those claims without leave to amend.

As to the state law claims against Mezzo, the Court denies Plaintiff's motion and grants Mezzo's motion for reasons similar to those articulated above in the Court's ruling on the motions to dismiss as to the state law claims.  The Court addresses each of Plaintiff's state law claims below, including the state law claims first raised in her opposition filings.  These claims against Mezzo are legally insufficient.

Mezzo is entitled to summary judgment on Plaintiff's fraud claim.  As an initial matter, the fraud claim against Mezzo is dismissed because it fails to meet the heightened pleading requirements for actions alleging fraud.  In its prior ruling, the Court already held that Plaintiff fails to allege that Mezzo was involved in the negotiations between Plaintiff and U.S. Bank/SPS before the law day of March 12, 2019, had passed.  *See Rothermel*, 2025 WL 950718, at *18 (holding that "there are no allegations suggesting that Mezzo was involved in the alleged RESPA violations").  Mezzo is not mentioned at all in any of Plaintiff's factual allegations in connection with the allegedly fraudulent EMAP compliance affidavit.  Moreover, despite Plaintiff's insistence that Mezzo purchased her home in 2015 using a third party straw buyer, "used a loan from his father in the form of a (purchase money mortgage) in order to disguise his involvement and ownership," and that he "fabricated and altered records . . . to remove his name and address to misdirect invesli9ators [sic] in search of evidence," Plaintiff has failed to produce a shred of evidence that would be sufficient to support a jury verdict in her favor.  Pl's Aff., ECF No. 97 at 1–2; Pl's Opp'n to Mezzo Mot., ECF No. 79 at 4.  As a result, the fraud claim against Mezzo is dismissed as a matter of law.  Accordingly, the civil conspiracy and aiding and abetting fraud

causes of action against Mezzo are necessarily dismissed as well, as they are not independent claims.

Mezzo is also entitled to summary judgment on Plaintiff's CUTPA claim, as Plaintiff fails to allege any facts showing that Mezzo was acting in trade or commerce, a necessary element of a CUTPA claim. Under CUTPA, "trade" and "commerce" are defined as "the advertising, the sale or rent or lease, the offering of sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." *See* Conn. Gen. Stat. § 42-110a(4). Plaintiff claims that Mezzo *purchased* her house. The act of purchasing property is not considered "trade" or "commerce" under CUTPA—the statutory definition refers only to the conduct of offering something for sale or rent. In any case, even if the act of purchasing could be considered "trade" or "commerce" as defined by CUTPA, CUTPA is inapplicable to a transaction where the defendant, like Mezzo, was not alleged to be in the business of real estate transactions. *See Biro v. Matz*, 132 Conn. App. 272, 290 (2011). Thus, even assuming it is true that Mezzo purchased Plaintiff's home, such a claim is not cognizable as a CUTPA claim alleging unfair or deceptive acts in trade or commerce.

Likewise, it is appropriate to grant Mezzo's motion for summary judgment, and deny Plaintiff's, on her breach of contract claim, as there is no evidence demonstrating that Mezzo was a party to any relevant contract with Plaintiff. *See FCM Grp., Inc. v. Miller*, 300 Conn. 774, 787 (2011) ("A person who is not a party to a contract (*i.e.*, is not named in the contract and has not executed it) is not bound by its terms." (cleaned up)). It is undisputed that Mezzo was not a party to the mortgage agreement or the alleged short sale agreement between SPS and Plaintiff. Mezzo cannot be held liable for breaching a contract to which he was not a party. The breach of the notice

of acceleration provision claim against Mezzo is dismissed for the same reason: Plaintiff has submitted no evidence that Mezzo was party to the mortgage agreement.

The IIED claim against Mezzo is dismissed because Plaintiff has produced no evidence showing that he was involved in the loss of her home. Plaintiff provides only conclusory allegations, and her purported evidence is not evidence at all. The exhibits attached to Plaintiff's various filings do not show that Mezzo actually bought the property, and Plaintiff's *ad hominem* attacks on Mezzo about his personal life in no way show that Mezzo is associated in any way to the foreclosure and sale of her property. *See, e.g.*, Pl.'s Exs., ECF No. 28 at 12–13 (real estate listing and Zillow page of the property located at 104 Bald Hill Road); Olsen Aff., ECF No. 30 at 9 (real estate listing of the property located at 104 Bald Hill Road); ECF No. 51-1 at 1–3 (real estate listing of and a newspaper article mentioning the property located at 104 Bald Hill Road); ECF No. 79 at 9 (court records irrelevant to the instant action); ECF No. 97 at 3 (same).

There are no viable claims remaining against Mezzo. Accordingly, in combination with the Court's prior ruling, Plaintiff's motion for summary judgment is denied as moot as to U.S. Bank, SPS, and Attorney Cheverko and denied in full as to Mezzo. Mezzo's motion for summary judgment is granted in full.

## V.    MOTION FOR LEAVE TO AMEND

Next, the Court denies Plaintiff's motion to amend the complaint. Plaintiff proposes adding seven additional defendants—Attorney Glass, Attorney Jessica Braus, Brian K. Hunter, Attorney Ridgely Brown, State Marshal Ernest A. Laden, State Marshal John Gallup, and Tenesha L. Mezzo—and six additional counts for violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988; abuse of process; malicious prosecution; intentional infliction of emotional distress; mail fraud; and fraud. ECF No. 116 at 2–3, 4–7. As Plaintiff does not attach a proposed third amended

complaint to the motion, the Court will consider the motion as if it were both a motion for leave to amend and the proposed complaint.

The Court notes two issues. First, Plaintiff has already attempted to bring claims against three of the proposed defendants—Attorneys Glass, Braus, and Brown—in the *original* complaint in this action. *See* Compl., ECF No. 1 at 1 (listing Attorneys Glass, Braus, and Brown in the case caption). After the Court *sua sponte* dismissed the original complaint for lack of subject matter jurisdiction, but without prejudice to Plaintiff filing an amended complaint addressing certain deficiencies in the original complaint, Plaintiff submitted an amended complaint that did not name Attorneys Glass, Braus, and Brown as defendants. *See* Order, ECF No. 24; ECF No. 26 at 1 (amended complaint listing only U.S. Bank, SPS, Attorney Cheverko, and Mezzo as defendants). Second, Plaintiff's motion for leave to amend barely mentions U.S. Bank, SPS, Attorney Cheverko, and Mezzo at all. Still, given that Plaintiff is proceeding *pro se*, the Court will consider these proposed claims as if they were being brought against U.S. Bank, SPS, Attorney Cheverko, Mezzo, and the seven additional defendants. *See Tracy*, 623 F.3d at 101–02 (discussing special rules of solicitude for *pro se* litigants).

A.  <u>Legal Standard</u>

Because the scheduling order did not set deadlines for amended pleadings and joinder pending the Court's resolution of U.S. Bank, SPS, and Attorney Cheverko's motions to dismiss, ECF No. 56 at 1, the motion to amend is governed by Federal Rule of Civil Procedure 15(a)(2). That rule provides that a party may amend its pleading with the opposing party's consent or the court's leave, and further provides that the court "should freely give leave when justice so requires." *Id.* Rule 15(a)(2) "is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith,

dilatory motive, or futility." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (cleaned up), *cert. denied sub nom.*, *N.Y. Univ. v. Sacerdote*, 142 S. Ct. 1112 (2022).

Relevant here, a proposed amendment is considered futile if it "fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Nwachukwu v. Liberty Bank*, No. 3:16-CV-704 (CSH), 2016 WL 3647837, at *2 (D. Conn. July 1, 2016) (citing, among others, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)); *see also Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 99 (2d Cir. 2010) (affirming district court's denial of leave of amend complaint as futile because the proposed amended complaint did not cure the original complaint's subject matter jurisdictional defects); *Blanchard v. Doe*, No. 17-CV-6893 (PKC) (JO), 2019 WL 2211079, at *3–4 (E.D.N.Y. May 22, 2019) (denying leave to amend complaint because proposed amended claims would fail due to the defendants' official immunities and reasoning that "an amendment is futile if it would fail to state a plausible claim for relief or if an affirmative defense, *e.g.*, the defendant's immunity, is apparent").

Thus, a proposed amended complaint is futile "if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente*, 310 F.3d at 258. "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Iqbal*, 556 U.S. at 679).

B. <u>Federal Claims</u>

Beginning with the proposed federal claims, the Court finds they are futile for failure to state a claim. The Court reads Plaintiff's claims for violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988; malicious prosecution; and mail fraud as being brought under federal law.

### 1.  Civil Rights Claims

Plaintiff appears to allege that Hunter, State Marshal Laden, and Attorney Glass violated §§ 1983, 1985, 1986, and 1988 due to their involvement in Plaintiff's eviction from the property located at 104 Bald Hill Road.  For the reasons described below, the Court finds that all of Plaintiff's civil rights claims fails to state a claim and are thus futile.

### a.  Section 1983

To state a § 1983 claim, Plaintiff must allege that (1) "some person has deprived [her] of a federal right," and (2) "the person who has deprived [her] of that right acted under color of state or territorial law."  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  The Court assumes, for the purpose of evaluating the motion for leave to amend, that State Marshal Laden was acting under color of state law when he evicted Plaintiff from 104 Bald Hill Road.  Hunter and Attorney Glass, however, appear to be private actors, not state actors.  In order to successfully state a § 1983 claim against Hunter and Attorney Glass, then, Plaintiff must "allege facts demonstrating that [they] acted in concert with the state actor to commit an unconstitutional act."  *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014).  For the purpose of this motion, the Court also assumes that Hunter and Attorney Glass worked together with State Marshal Laden to evict Plaintiff.  *See Gyadu v. Bainer*, No. 3:19-cv-01120 (MPS), 2021 WL 2073919, at *8 (D. Conn. May 24, 2021) (collecting cases).

Here, Plaintiff contends that Hunter, State Marshal Laden, and Attorney Glass "conspired to deny Plaintiff's [r]ights, [p]rivileges and immunities" and "conspired for the purpose of impeding and hindering the due course of justice with the intent to deny [Plaintiff] equal protection of law."  ECF No. 116 at 4.  Specifically, Plaintiff claims that State Marshal Laden evicted her from her home even though he was "aware of the appellate and bankruptcy stays as well as a court order prohibiting an eviction by the Hon. Kevin Tierney."  *Id.*  She also alleges that Attorney Glass

lied to the New Canaan Town Clerk that the eviction was an "emergency" in order to circumvent the two-week notice period for evictions, "obstructed the possibility of a bankruptcy stay," and sold Plaintiff's home prior to obtaining "legal and official title." *Id.* at 5. Plaintiff makes no specific allegations regarding Hunter, except that he is a real estate broker who was "knowingly part of the Conspiracy." *Id.* at 2. The Court reads these allegations as bringing a § 1983 claim for violations of Plaintiff's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.

To state an equal protection claim, a plaintiff must allege that: (1) she was treated differently from similarly situated individuals, and (2) the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). A plaintiff must show "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Absent a suspect classification, a plaintiff may proceed under a "class of one" theory by "alleg[ing] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Court finds that Plaintiff fails to demonstrate that her right to equal protection was violated by Hunter, State Marshal Laden, or Attorney Glass. Plaintiff has not alleged membership in a suspect class for purposes of an equal protection claim, nor has she provided information about any other potential protected class to which she may belong. Plaintiff also fails to allege a successful equal protection claim under a "class of one" theory, as she has not identified how she

was treated differently from others similarly situated.  Thus, to the extent that Plaintiff's § 1983 claim is based on the right to equal protection under the Fourteenth Amendment, it is futile for failure to state a claim.

While Plaintiff does not specify whether she asserts a claim of procedural or substantive due process, her allegations make clear that her proposed § 1983 claim for violations of her due process rights centers on the lack of notice prior to her eviction and the disregard for various procedural safeguards against her eviction from and sale of the property at 104 Bald Hill Road. Thus, the Court understands that Plaintiff is bringing a claim for deprivation of procedural due process.  *See Gordon v. Nicoletti*, 84 F. Supp. 2d 304, 308 (D. Conn. 2000) ("Procedural due process claims concern the adequacy of the procedures provided by the governmental body for the protection of liberty or property rights of an individual.").  A plaintiff states a procedural due process claim under the Fourteenth Amendment by plausibly alleging that "(1) state action (2) deprived him or her of liberty or property (3) without due process of law."  *Bellin v. Zucker*, 6 F.4th 463, 474 (2d Cir. 2021).

Plaintiff has previously attempted to allege facts surrounding her eviction at least a half dozen times in this action alone.  *See, e.g.*, ECF No. 1 at 2 (original complaint alleging that Attorney Glass "did an 'EMERGENCY EVICTION'" while the "Appellate Stay was in place"); ECF No. 51 at 2 (Plaintiff's first opposition to Attorney Cheverko's motion to dismiss arguing that State Marshal Laden was instructed "to ignore any reference to a court order and to proceed with haste to evict the homeowner" and that U.S. Bank and its attorneys "ignored" the Town of New Canaan's requirement to give two-week notice prior to eviction); ECF No. 67 at 2–3 (Plaintiff's motion for summary judgment alleging she was evicted without proper notice and in contravention of an appellate stay and court order); ECF No. 79 at 2–4 (Plaintiff's first response to Mezzo's

motion for summary judgment alleging same and that Attorney Glass "rushed the sale of the house to Mezzo for $821,000 . . . ignoring an Appellate [sic] Stay and a Court Order from the Superior Court that all Appellate Stays had to be extinguished"); ECF No. 97 at 2 (Plaintiff's amended response to Mezzo's summary judgment motion contending that Attorney Glass "rushed an emergency eviction" and "ignored" court orders); ECF No. 98 at 2 (Plaintiff's amended response to Attorney Cheverko's motion to dismiss claiming same).

Given Plaintiff's extensive history of repleading the facts about the eviction, the Court once again takes judicial notice of state court documents relating to the underlying foreclosure proceeding along with Plaintiff's bankruptcy proceedings, in order to evaluate the plausibility of these allegations. *See Giraldo*, 694 F.3d at 164; *Vitti*, 2021 WL 4810578, at *1 n.1; *DeForest v. Bank of N.Y. Mellon*, No. 3:17-cv-1504 (VAB), 2018 WL 4078275, at *5 n.2 (D. Conn. Aug. 27, 2018) (taking judicial notice of bankruptcy court filings); *see also Parkcentral Glob. Hub Ltd.*, 763 F.3d at 208–09.

As the Court noted in its prior ruling on the motions to dismiss and cross motions for summary judgment, the eviction was *ordered* by the Connecticut Superior Court. *See Rothermel*, 2025 WL 950718, at *2; *see also* March 6, 2023, Order, ECF No. 42-11 at 2 (noting that the Connecticut Superior Court issued the eviction order on November 4, 2022, and that Plaintiff was evicted on November 29, 2022). It is also clear that any stay of an eviction was lifted on October 17, 2022—the Connecticut Superior Court unequivocally lifted any present and future appellate stay in connection with the Foreclosure Action. *See* Order, *U.S. Bank Nat'l Ass'n, as Tr., ex rel. Holders of Adjustable Rate Mortg. Trs. v. Rothermel*, No. FST-CV13-6017616-S (Conn. Super. Ct. Oct. 17, 2022), Dkt. 263.03. Plaintiff is aware of this order because she attached it as an exhibit in one of her filings. *See* ECF No. 30 at 6. And any stay connected to Plaintiff's multiple

bankruptcy filings was undeniably lifted on June 6, 2022.  *See* Order, *In re Rothermel*, No. 22-50160 (Bankr. D. Conn. June 6, 2022), ECF No. 35.  The District of Connecticut Bankruptcy Court specifically concluded that the order lifting the stay was "binding in any other case under this title purporting to affect" the property at 104 Bald Hill Road "filed not later than two years after the date of the entry of this Order," in part because the court found that "the filing of [Rothermel's bankruptcy] petition was part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcy filings." *Id.*  Indeed, on November 30, 2022, the day after the eviction, the Connecticut Superior Court confirmed to Plaintiff that there was neither an appellate nor bankruptcy stay on the eviction.  *See* Order, *U.S. Bank*, Dkt. 272.01.  Plaintiff was aware of this order as well, given that she also attached it as an exhibit to a filing. *See* ECF No. 30 at 8.  Finally, on January 17, 2023, the Connecticut Superior Court explained once again to Plaintiff that U.S. Bank, SPS, and their attorneys did not violate any of its orders by evicting her.  *See* Order, *U.S. Bank*, Dkt. 274.03 (denying Plaintiff's motion for sanctions in connection with her eviction).

Thus, it is clear that Plaintiff has not provided, and could not provide, facts plausibly supporting her claims that her procedural due process rights were violated.  Thus, a § 1983 claim predicated on that theory fails as a matter of law.  Plaintiff's § 1983 claim, whether brought on the basis of equal protection or due process violations or both, is futile for failure to state a claim.

### b.  Sections 1985, 1986, and 1988

Plaintiff's remaining civil rights claims fare no better.  First, Plaintiff fails to plausibly allege a conspiracy between Hunter, State Marshal Laden, and Attorney Glass to deprive her of her equal protection rights, as required for her § 1985 claim.  "The elements of a claim under § 1985(3) are:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws . . . ; (3) an act in furtherance of the

conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000). A § 1985 conspiracy "must be motivated by racial animus." *Id.* Here, Plaintiff has not alleged her race, nor any facts to suggest that the conspiracy was motivated by her race. Even though Plaintiff alleges that Hunter, State Marshal Laden, and Attorney Glass were involved in some kind of conspiracy, she does not allege that it is a conspiracy motivated by her race. Therefore, the Court finds that Plaintiff's § 1985 claim is futile for failure to state a claim for relief.

Second, the Court in turn finds that the § 1986 claim is futile for failure to state a claim, because a § 1986 claim "must be predicated on a valid § 1985 claim." *Id.*; *see also* 42 U.S.C. § 1986 (referring to § 1985).

Finally, § 1988 does not provide an independent cause of action. *See Suffolk Cnty. Police Benevolent Ass'n v. Trotta*, No. 22-cv-05803 (JMA) (LGD), 2024 WL 3443490, at *4 (E.D.N.Y. July 17, 2024) (collecting cases). Rather, it is most commonly cited as a mechanism for collecting attorney's fees, upon successful prosecution of an action under §§ 1983, 1985, 1986, or other civil rights statutes. *See* 42 U.S.C. § 1988(b). Section 1988(a) also provides that "where there are gaps in federal law with respect to the availability of suitable remedies for civil rights violations, the courts should look to state law insofar as it is not inconsistent with federal law." *Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 362 (2d Cir. 1997). Given that none of Plaintiff's §§ 1983, 1985, or 1986 claims survive, Plaintiff would not be entitled to attorney's fees or any other remedy for those claims. The § 1988 claim is therefore futile for failure to state a claim.

### 2.  Malicious Prosecution

Next, in order to prevail on her claim for malicious prosecution, Plaintiff "must show a violation of [her] rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).  First, "[t]o show a violation of [her] Fourth Amendment rights, a Section 1983 plaintiff asserting a malicious prosecution claim 'must . . . show some deprivation of liberty consistent with the concept of 'seizure.'" *Plude v. Adams*, No. 3:12-cv-69 (AWT), 2013 WL 943730, at *1 (D. Conn. Mar. 11, 2013) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)). Second, to establish the elements of a malicious prosecution claim under Connecticut law, the plaintiff must demonstrate "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings must have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Torlai v. LaChance*, No. 3:14-cv-185 (JCH), 2015 WL 9047785, at *5 (D. Conn. Dec. 15, 2015) (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210–11 (2010)).  Because Plaintiff does not allege that any criminal proceedings have been initiated against her, the Court finds that her malicious prosecution claim is futile for failure to state a claim for relief.

### 3.  Mail Fraud

As to the mail fraud claim, which appears to be brought under federal criminal statutes 18 U.S.C. §§ 1341 and 1342, the Court repeats, for the third time, that "[f]ederal criminal statutes do not provide private rights of action." *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (collecting cases); *see also* Order, ECF No. 24; *Rothermel*, 2025 WL 950718, at *16.  Therefore,

Plaintiff may not and cannot bring a claim under federal criminal statutes in a personal capacity to enforce a legal right.

In sum, the Court finds that all of Plaintiff's proposed federal causes of action are futile for failure to state a claim for relief.

C.  State Law Claims

As to the state law claims proposed in the motion for leave to amend—abuse of process, IIED, and fraud—the Court likewise finds that they are futile for failure to state a claim.

Plaintiff attempts to bring an abuse of process claim against unidentified defendants.  "An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'"  *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (quoting *Varga v. Pareles*, 137 Conn. 663, 667 (1951)).  Plaintiff makes no factual allegations in support of her claim and merely provides the legal standard of an abuse of process cause of action and conclusory legal statements that "Defendants made an improper, illegal, and perverted use of the legal procedure" and "had an ulterior motive in initiating the legal process."  ECF No. 116 at 5.  Thus, the Court finds that Plaintiff's abuse of process claim is futile for failure to state a claim.

Likewise, the proposed IIED claim, which is also brought against unidentified defendants, is futile.  There are once again no factual allegations in support of this cause of action.  Plaintiff only recites the legal standard of an IIED claim and conclusorily alleges, without any facts, that she "suffer[ed] severe emotional distress as a result of Officials [sic] conduct," *id.* at 6.  *See Huff*, 10 F. Supp. 2d at 122 ("Mere conclusory allegations are insufficient as a matter of law to support a cause of action for [IIED].").  Without any apparent explanation, Plaintiff also refers to, for the first time in the dozens of filings that the Court has reviewed, false imprisonment as an example of the extreme and outrageous conduct required to state an IIED claim.  ECF No. 116 at 6–7.

Finally, the Court finds that Plaintiff's fraud claim is also futile because it fails to state a claim for relief.  Plaintiff alleges only that "U.S. Bank knew that the loan was fraudulent" and that there was "fraud in the factum" in the procedure used to "purchase" her property.  *Id.* at 7.  As articulated above, allegations regarding the circumstances of a fraud claim must be pleaded with particularity.  *Loubier*, 2010 WL 1279082, at *5.  Plaintiff fails to identify any particular fraudulent statement made by U.S. Bank, state where and when these purported fraudulent statements were made, or even explain why there was "fraud in the factum" in the foreclosure, eviction, or sale of the property located at 104 Bald Hill Road.  *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 167.  As Plaintiff has unsuccessfully attempted to rehash allegations of fraud in a multitude of different flavors in connection with the Foreclosure Action, the Court cannot conclude that the deficiencies it has identified in Plaintiff's many fraud-adjacent claims can be remedied.  Between this action, the Foreclosure Action, the state court appeals, and the bankruptcy filings, Plaintiff has likely submitted hundreds of pages of complaints, briefings, and notices.  In none of these filings has Plaintiff provided any facts, beyond bare bones allegations and far-fetched accusations that are often unrelated to the issues at hand, to suggest that U.S. Bank, SPS, Attorney Cheverko, Mezzo, or any of the proposed defendants have engaged in any sort of fraud or misrepresentation in order to steal her property.

Accordingly, the Court finds that every claim proposed in Plaintiff's motion for leave to amend is futile for failure to state a claim.

## VI.    CONCLUSION

For the reasons detailed herein, the Court GRANTS in part Attorney Cheverko's motion to dismiss, ECF No. 39, GRANTS in part U.S. Bank and SPS's motion to dismiss, ECF No. 42, GRANTS in part Mezzo's motion for summary judgment, ECF No. 76, DENIES in part Plaintiff's

motion for summary judgment, ECF No. 67, and DENIES Plaintiff's motion for leave to amend, ECF No. 116.  As all claims against all Defendants have been dismissed without leave to amend, the Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 25th day of July, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE